## HARRISON v. LAKENAN et al., Appellants.

Division One, June 15, 1905.

1. **ACTION: Money Had and Received: Authority to Receive.** One who receives money for the use of another, even without any prior authority to receive it, is liable to the person to whose use it was received, and it is no defense that the receiver had no previous authority to receive it, and hence it is not necessary, in a suit for money had and received, that the petition allege that defendant had authority to collect the money sued for.

2. ————: **Pleading: Variance in Proof.** Defendants are not in a position to complain that the petition alleges a written contract whereas the proof showed a verbal contract, if they filed no affidavit setting up the variance.

3. **MONEY HAD AND RECEIVED: Demurrer.** In a suit to recover from defendants money received by them for the sale of plaintiff's farm, if there is substantial evidence to establish the allegations of the petition that defendants had received and retained a certain sum in excess of the commissions agreed upon, the court should overrule a demurrer to the evidence.

4. ———: **Evidence: No Issue: Value of Land: Cured by Instruction.** Plaintiff sued for money had and received by defendants as his agents in excess of the commissions agreed upon by them for the sale of his farm, and at the trial the court admitted evidence as to the value of the land, as bearing upon the wrongful conduct of the defendants in representing to him that they could not sell the land for more than a certain sum per acre and thereby inducing him to agree to a modification to that extent of the contract. No such issue was properly in the case, but at the request of defendants the court instructed the jury that if they believed plaintiff consented to a modification of the contract their verdict must be for defendants. *Held*, that whatever harm was done to defendants by the admission of the evidence was neutralized by the instruction.

5. ———: ———: ———: **Cross-Examination: Letters.** Defendants were not injured, and could not be, by permitting plaintiff to cross-examine them about certain letters written by them to him.

6. ———: **Demand.** Where the answer does not plead that no demand was made before the institution of the suit, but is a general denial, that defense is not available.

7. **WITNESSES: Unimpeached: Credibility: Character: Instruction.** Although no evidence is adduced affecting the character or reputation of any witness, an instruction directing the jury that, in determining the weight and credibility to be given to the testimony of the witnesses, they should take into consideration the character of the witness, is not error. There is a vast difference between a witness's character and reputation. An opinion of the witness's character, which means his intellectuality, individuality, education, disposition, moral quality, etc., may be formed by the jury from his manner, appearance, bearing and conduct before them.

8. **CONTRACT: Alteration.** A material alteration in a contract, for instance, one authorizing a sale of land at a different price and changing the amount of commissions the agents were to receive, unless ordered, directed or consented to by the other party, renders the contract void.

9. ——: ——: **At Different Place: Harmless Error.** Where the defendants' whole contention is that the agreement to alter the contract was entered into in their office, and there is no evidence tending to prove that such alteration was proposed, made or agreed to at any other place, it is not error to tell the jury that the plaintiff is not bound by the alteration if he was not present in defendants' office at the time the alteration was made.

10. ——: **Misreading.** Where the suit is not on the contract, but for money had and received, an instruction which tells the jury that if they find that plaintiff signed a contract between himself and defendants for the sale of plaintiff's lands, yet if they believe he never read it and that in reading it to him the defendants fraudulently deceived the plaintiff as to its true character by misreading the price at which the contract recited that the land was to be sold by them, then the contract is not binding on him, is not erroneous. The suit is not one to cancel the contract, but the contract being only a portion of the evidence in the case, and defendants relying on the contract and plaintiff contending that it was not binding on him because he had been fraudulently induced to enter into it, it was proper for the court to tell the jury whether or not the contract was binding on plaintiff.

11. ——: **Different Handwriting: Legitimate Argument.** Plaintiff's counsel in his argument to the jury commented on the fact that the contract, which was before the jury, appeared to be in five different handwritings, and called the jury's attention specifically to the several parts which appeared to be written by different persons. *Held,* legitimate argument, and not erroneous because the attention of witnesses was not specifically called to the difference in handwriting contained therein.

12. **INSTRUCTION: No Evidence: Theory of Trial.** Where there is no evidence to support a theory presented by an instruction, and the case is not tried on that theory, the instruction should be refused.

13. ——: **Covered by Others: No Foundation in Facts.** It is not error to refuse instructions which cover propositions fully covered by others given. Nor to refuse such as are predicated upon hypotheses which have no foundation in either the facts or theories on which the case was tried.

14. **JUDGMENTS: Law Case: Passion.** The fact that the preponderance of the evidence is in favor of appellants is no foundation for the charge that the verdict was the result of passion, prejudice or partiality.

Harrison v. Lakenan.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*C. A. Barnes, George Robertson* and *F. R. Jesse* for appellants.

(1) The first count of the petition does not state a cause of action against a real estate broker—no authority is alleged to collect the purchase money. Stewart v. Wood, 63 Mo. 252; Butler v. Donnan, 68 Mo. 298; Chambers v. Short, 79 Mo. 204; Smith v. Allen, 86 Mo. 178; 4 Am. and Eng. Ency. Law (2 Ed.), 965. (2) There was a complete variance between the allegations of the first count of the petition on which the case was tried and the proof, and the general and special demurrers or either should have been sustained. The contract of sale read in evidence signed by the defendants as plaintiff's agents shows that the money was to be paid plaintiff. The proof shows that the first check was drawn to defendants and the money collected by them, then turned over to plaintiff. If plaintiff had any cause of action against defendants it was for money had and received. Robbins v. Ins. Co., 12 Mo. 308; Chase & Son v. Mercantile Co., 63 Mo. App. 482; Gwyn v. Smurr, 101 Mo. 550. Plaintiff alleged a contract and there is a complete variance between that and his proof. McCormick Co. v. Railroad, 154 Mo. 191; Huston v. Taylor, 140 Mo. 252. (3) There was not one word of proof outside of the contract of September 11, 1897, that defendants were to have a commission of five per cent on the first thousand dollars and two and one-half per cent of each remaining thousand dollars of the purchase-price, and therefore there was a complete failure of proof. Defendants' demurrer should have been sustained. Chitty v. Railroad, 148 Mo. 64; Crawford v. Aultman, 139 Mo. 262; Thompson v. Irwin, 76

Mo. App. 418. (4) Plaintiff's evidence was insufficient to support any cause of action. When there is no substantial evidence to support a verdict it will be set aside. Hewitt v. Steele, 136 Mo. 327; Payne v. Railroad, 136 Mo. 576. (5) The court erred in allowing the plaintiff to cross-examine the defendants as to the value of the land or as to their opinion as to the value of the land. Jones, Law of Evidence, secs. 136-139; Bates v. Forcht, 89 Mo. 121. (6) The court erred in permitting the cross-examination of defendant Lakenan as to the contents of certain letters and meaning of them and the intent of the writer, etc. Johnson County v. Wood, 84 Mo. 489; Hunt v. Hunter, 52 Mo. App. 263; Jones, Law of Evidence, sec. 838; State v. Gritzer, 134 Mo. 512; Madden v. Railroad, 50 Mo. 666. (7) There was no demand proven. The action could not be maintained until after demand made by the plaintiff upon defendants for the money retained. Mechem on Agency, sec. 1025; Beardslee v. Boyd, 37 Mo. 180; Cockerill v. Kirkpatrick, 9 Mo. 688; Evans v. King, 16 Mo. 525; Cooley v. Betts, 24 Wend. 203; 9 Am. and Eng. Ency. Law (2 Ed.), 208; Id. vol. 1, 1091; Id. vol. 12, 699. (8) Plaintiff's instruction 1 is error because it tells the jury that in determining the weight and credibility to be given to the testimony of any witness they should take into consideration the character of the witness. No testimony was offered affecting the character or reputation of any witness, and such an instruction is only permissible where the character of the witness has been attacked. 1 Wharton on Ev., sec. 564; State v. Hilsaback, 132 Mo. 348; Jones, Law of Evidence, secs. 156, 862; 5 Am. and Eng. Ency. Law (2 Ed.), 861; Alkire Grocer Co. v. Jugart, 78 Mo. App. 166; Gutzwiller v. Lockman, 23 Mo. 168; Rogers v. Troost, 51 Mo. 470; Dudley v. McCluer, 65 Mo. 241; Thompson on Trials, secs. 970, 971. (9) Plaintiff's instruction 3 is error because it tells the jury that the written matter of July 15, 1898, is of "no binding force or effect whatever upon

the plaintiff unless the jury believe from the evidence that plaintiff was present in the office of the defendants at the time said matter under said date was written in said contract and authorized said matter to be written in said contract or agreed to or sanctioned the same after it was written and read over to him.'' If it had been agreed upon between plaintiff and defendants it was not necessary to read it over to him nor necessary that it should be written in his presence nor that he should have been in defendants' office when it was done. It was sufficient that the fact was agreed upon and written at any time either without or within his presence and whether it was read over to him after written or it would be good if made but not written. (10) Plaintiff's instruction 7 is error because it puts it into the power of the jury to pass upon the validity of the contract mentioned in this instruction when this action was not for the cancellation of the contract and had nothing whatever to do with the contract described in the instruction. If the contract were obtained under the hypothesis of this instruction, then only a court of equity would have the power to set it aside. Hancock v. Blackwell, 139 Mo. 440; Courtney v. Blackwell, 150 Mo. 245; Pomeroy, Eq. Juris., secs. 915, 1377. (11) The statement of plaintiff's attorney to the jury was unauthorized and based upon no testimony in the case, and was an attempt to mislead and prejudice the jury against the defendants without anything whatever to base it upon. Mahner v. Finck, 70 Mo. App. 380; State v. Jerguson, 152 Mo. 92; Evans v. Trenton, 112 Mo. 390; Thompson on Trials, secs. 963-976. (12) The verdict is the result of the passion and prejudice of the jury and partiality toward the plaintiff. The preponderance of the evidence is so strong against the verdict as to raise the presumption of prejudice and passion or partiality on the part of the jury. Snyder v. Railroad, 85 Mo. App. 498; Price v. Evans, 46 Mo. 396; Spohn v. Railroad, 87 Mo. 74; Walton v. Railroad, 49

Mo. App. 620; Empey v. Railroad, 45 Mo. App. 422; Garrett v. Greenwell, 92 Mo. 120; State v. Primm, 98 Mo. 368.

*R. D. Rodgers* and *P. H. Cullen* for respondent.

(1) The petition is not an action on a special contract, but is, as the statute prescribes, a plain and concise statement of the facts constituting a cause of action, based on the rule of law which authorizes a plaintiff to sue and recover from a defendant the amount of money belonging to plaintiff which the defendant has received for plaintiff's use. Johnson-Brinkman Co. v. Bank, 116 Mo. 567; Beal v. Bank, 79 Mo. App. 269; Winnigham v. Fancher, 52 Mo. App. 463; Clark v. Bank, 57 Mo. App. 285; 14 Ency. of Pl. and Pr., 53; Ingram v. Ashmore, 12 Mo. 574; Williams v. Railroad, 112 Mo. 468; Moore v. Gaus & Sons, 113 Mo. 107; Mansur v. Botts, 80 Mo. 657; Royce, Allen & Co. v. Oakes, 39 L. R. A. 845, 20 R. I. 418. (2) Before a litigant can complain of a variance between the allegation and the proof, he must object to the testimony when offered, on the distinct ground of a variance and make the statutory affidavit setting forth in what respect he has been misled, and this affidavit is the sole test of a materiality of the discrepancy between the *allegata* and *probata*. Failing to object and make the affidavit aforesaid, the point will not be considered on appeal. R. S. 1899, pp. 655, 666; Real Estate Co. v. Stead R. Co., 159 Mo. 562. (3) Before it can be held that there is a failure of proof the allegation of the cause of action to which the proof is directed must be unproved in its entire scope and meaning. The fact that it is unproved in some particular or particulars only, is not a failure of proof. Such is the rule expressed in the statute and accentuated by the decisions. R. S. 1899, sec. 798; Owens v. Railroad, 95 Mo. 169; Hartpence v. Rogers, 143 Mo. 632; Frederick v. Allgaier, 88 Mo. 598. (4) The rule that the proof

must correspond to the allegations applies only to such allegations as are themselves material to the action. It does not apply to matters of inducement and in explanation. Bell v. Scott, 3 Mo. 212; Ward v. Steamboat, 7 Mo. 582; State v. Millsaps, 69 Mo. 359; Clements v. Malony, 55 Mo. 352; Campbell v. Wolf, 33 Mo. 459; Crawford v. Thoroughman, 13 Mo. App. 569. (5) A variance between the proof and immaterial allegations which may be stricken out as surplusage, without destroying or changing the legal effect of the remainder, is not fatal. State v. Jackson, 90 Mo. 156; State v. Hays, 36 Mo. 80; Hutchison v. Patrick, 3 Mo. 65; Ward v. Steamboat, 7 Mo. 582. (6) As regards the rule that the allegations and the proof must correspond, it is immaterial whether the contract alleged is express or implied. If the evidence of an implied promise shows the particular duty alleged, and, therefore, in legal effect, the same promise, there is no variance. Wheeler v. Reed, 36 Ill. 81; Potter v. Brown, 35 Mich. 274; Railroad v. McDonough, 21 Mich. 165; Nimm v. Towers, 23 S. W. 1117; Railroad v. Friedman, 146 Ill. 583. (7) Even if the defendants had no authority to collect the money, yet if, as a matter of fact, they did collect the money, the plaintiff has the right to waive the irregularity by which the money was paid to his agents and hold them for the amount they received. It is of no importance how the money came into defendants' hands, if plaintiff is legally entitled thereto. Clark v. Bank, 57 Mo. App. 285; Tanner v. Kellogg, 49 Mo. 118; Johnson-Brinkman Co. v. Bank, 116 Mo. 569; Hindmarch v. Hoffman, 4 L. R. A. 368; Lubert v. Chauviteau, 3 Cal. 458. (8) If plaintiff's theory of this case is true, viz: that defendants, while the agents of the plaintiff, changed the written contract between themselves and plaintiff, and retained nearly $5,000 belonging to plaintiff, the defendants are precluded from asserting any right under the original or altered contract, and their right to any commission has been forfeited by reason

of their bad faith and they cannot complain because plaintiff, by an admission in his pleading, allows them a certain per cent, for the plain reason that under the law they were not entitled to any compensation. Brock v. Hart Com. Co., 57 Mo. App. 605; Mechem on Agency, sec. 619; Brannan v. Strauss, 75 Ill. 235; Myers v. Walker, 31 Ill. 363; Talbott v. Luckett (Md.), 30 Atl. 565; Henderson v. Vincent (Ala.), 4 So. 180; Martin v. Bliss, 57 Hun 157; Wadsworth v. Adams, 138 U. S. 380; Hall v. Gambriel, 92 Fed. 30; Proudfood v. Wightman, 78 Ill. 553; Hofmer v. Herron, 46 N. E. 211; Buckingham v. Harris (Colo.), 15 Pac. 819; Lawson v. Thompson, 37 Pac. 732. (9) Plaintiff's instruction 7 is not erroneous. The proof showed that the defendants misread the contract to plaintiff, and the contract was therefore void in law on account of fraud touching its execution. The rule is that a contract or release is not binding as a defense to an action at law if obtained in circumstances amounting to fraud on the signer—such as misreading it, or surreptitiously substituting one paper for another whereby the signer is led into giving formal assent to a paper different from his understanding as to the scope of the agreement which he intended actually to make thereby. Railroad v. Horn, 158 U. S. 326; George v. Tate, 102 U. S. 564; Girard v. Car Wheel Co., 123 Mo. 358; Och v. Railroad, 130 Mo. 42; Wright v. McPike, 70 Mo. 175; Burrows v. Alter, 7 Mo. 424; Montgomery v. Tipton, 1 Mo. 318; Pemberton v. Staples, 6 Mo. 59; Edgell v. Sigerson, 20 Mo. 494; Briggs v. Ewart, 51 Mo. 245; Martin v. Smylee, 55 Mo. 577; Coby v. Wedale, 57 Mo. 452; Cole v. Weidmair, 19 Mo. App. 7. (10) It was the duty of the defendants in effecting a sale of the land to exercise that degree of care, skill, diligence and business judgment possessed by men engaged in like business, and to advance the interests of their principal by doing the best they could for him. The paramount and vital principles of all agencies is good faith, and good faith requires an agent

to make the most advantageous sale for his principal, and any profits made out of the sale of the principal's property by reason of the agent's obtaining a higher price than that limited by the principal, belongs to the principal, and plaintiff's instruction 5 correctly declares this rule of law. Best v. Priest, 86 Mo. 475; Mechem on Agency, sec. 470; Exeter v. Sawyer, 146 Mo. 302; Cutter v. Demmon, 111 Mass. 474; Merryman v. David, 31 Ill. 404; Kerfoot v. Hyman, 52 Ill. 512; Bain v. Brown, 56 N. Y. 285; Blanchard v. Jones, 101 Ind. 542; Greenfield Bond v. Simons, 133 Mass. 415; Kramer v. Winslow, 154 Pa. St. 637; 4 Am. and Eng. Ency. Law (2 Ed.), 969.

MARSHALL, J.—This is an action at law to recover $4,907.10 alleged to have been received by the defendants for the use of the plaintiff, and by the defendants retained without the knowledge or consent of the plaintiff. There was a verdict and judgment for the plaintiff for $4,888, from which, after proper steps, the defendants appealed.

## THE ISSUES.

The petition was originally in three counts, and upon motion of the defendants, the plaintiff was required to elect upon which count he would stand, and accordingly he elected to stand on the first count of the petition. In substance that count alleges that the defendants were, and are, partners engaged in the real estate business; that in June, 1898, the plaintiff employed defendants to sell his farm, consisting of 985.82 acres of land in Callaway county, Missouri, and agreed to pay them for so doing a commission of five per cent on the first $1,000 realized from the sale, and two and one-half per cent on each remaining $1,000 so realized; that the defendants agreed so to do for said commission; that thereafter, on the 14th of October, 1898, de-

fendants sold the land to one L. K. Scroggins at the price of $25 an acre, aggregating $24,645.50, and that they collected said sum from the purchaser therefor; that the defendants are entitled to retain, as their commission, the sum of $522; that about October 25, 1898, the defendants paid to the plaintiff the sum of $19,216.40, received by them from the sale of said land as aforesaid, "leaving a balance of $4,907.10 due me out of the purchase price of said land;" that said last-named sum was collected by the defendants for the use of the plaintiff as a part of the purchase price of said land, about the 14th day of October, 1898, and retained, by them, without his knowledge or consent, and that, though demanded, the defendants have failed and refused to pay the same to the plaintiff.

The answer is a general denial.

The case made is this:

Prior to and on the 11th of September, 1897, the plaintiff was a man of eighty-two years of age, a farmer, and owned about 1249 acres of land, more or less, in Callaway county. The defendants were partners and for many years had been engaged in the real estate business in Mexico, Missouri. On said 11th of September, 1897, at plaintiff's solicitation, as the defendants say, or at defendants' request, as the plaintiff says, the plaintiff placed said land in the hands of the defendants for sale. A written authority or contract was then entered into between the parties, as follows:

"I hereby authorize and empower Lakenan and Barnes, of Mexico, Missouri, to sell for me the following real estate situated in Callaway county, Missouri: [Here follows a description of the land] and containing in all 1249 acres, more or less, for the sum of $23 per acre, or my home place, 950 acres, at the same price, or the 300-acre farm occupied by Jack Harrison, at the same price, and also [a certain 80 acre tract described] at $20 per acre, separately or with other land.

"[*July* 15, 1898, *price reduced to* $20.00 *per acre*,

*L. & B. to get* $500 *out of* $20 *per acre and anything they can get over* $20.00 *per acre.*]

"One-half or more, option of buyer, cash on possession, and balance in one year with eight per cent interest from date.

"I promise to pay to said agents five per cent commission on the 1st $1,000 of each sale; two and one-half per cent on balance, per cent commission on the gross amount of said real estate, or any part thereof may bring when by or through them, or if sold by me, to pay party to whom they have shown this property. . . . In case said agents desire they may trade or sell said property for what they please just so they account to me for said price less said commission."

The portions of the writing omitted are not material to this controversy.

In the fall of 1897 the defendants procured Senator Wall of Stanton, Illinois, to examine the place. The defendants contend that on that occasion the plaintiff told the defendant, Barnes, that he would take $20 per acre for the land. The plaintiff says that in June, 1898, when Senator Wall examined the land a second time, the defendant, Barnes, told him he could not sell the farm at more than $20 an acre, and he then authorized him to sell at that price.

The defendants say that in July, 1898, Senator Wall indicated to them that he would come to Missouri and buy the land if he could get it for $20 an acre, and that on the 11th of July, 1898, they wrote the following letter to the plaintiff:

"We recently saw Mr. Wall and had quite a talk with him about your farm, and he talks like he might buy it at $20 per acre. Would come and take a look at it if it was priced at that; that is, 960 acres or about that.

"Now, while we consider this a low price, it is very seldom that we get a cash buyer for a farm of that size, and if you think best we will write him to come to see

it with the understanding that he can buy it at $20 per acre, if he wants it. Of course we did not go into particulars in regard to possession, etc. Let us hear from you."

The defendants say that in response to the letter the plaintiff called upon them at their office in Mexico on the 15th of July, and authorized them to sell the land, and at the same time agreed with them to change the original contract so as to reduce the price of the entire tract to $20 per acre, and to change the commission of the defendants as aforesaid, so as to give defendants the sum of $500, and all over $20 per acre they might sell the land for, and that accordingly the defendant, Barnes, in the presence and with the consent and by the authority of the plaintiff, and in the presence of J. J. Lakenan and Latney Barnes, wrote in the blank space that had been left in the original contract, the words above reproduced in said contract and embraced in the brackets therein and italicised, and which are to the effect just stated.

On the other hand, the plaintiff denies that he made any such modification or change in the original contract, or that he saw the same written into the contract, or knew that it had been so done, or consented thereto.

In August, 1898, Senator Wall was killed, and the defendants sent the plaintiff a paper containing an account thereof, and under date of August 20, 1898, wrote the plaintiff as follows:

"We send you herewith a paper in which you will notice of the death of Hon. H. W. Wall marked. Mr. Wall was the gentleman to whom we showed your farm; of course this will put an end to all negotiations with him.

"We are working on another man from whom we will have to take some Kansas land at $25, and want you to price it at not less than that, and would like for you to price it at $27.50 to $30 in a general way. This

Vo 189 mo—38

don't keep you from selling it if you get a chance.    Of course we know that in case we effect a sale or trade we account to you for the farm at $20 per acre less a commission of $500.    We are in hopes we will have this man to look at the place this coming week.''

There is a conflict in the evidence as to whether or not the plaintiff received this letter; at any rate, he never answered it and he says he never received it.

Thereafter the defendants induced L. K. Scroggins of Illinois to examine the land.    On the way back from the land to Mexico Scroggins offered to buy 985.82 acres at $25 per acre and the defendant, Barnes, representing the defendants, accepted the offer, the plaintiff having told Scroggins that he had put the land in the defendants' hands for sale and would abide by whatever they did.    Accordingly, on the 14th of October, 1898, the defendants entered into a contract of sale of the land to said Scroggins for $25 per acre, aggregating $24,645.50, of which $15,000 was to be paid when the deed was delivered, and the balance to be paid on March 1, 1899, less six per cent interest on the $15,000 from the day of its payment until March 1, 1899.

Said contract further recites that Scroggins executed and left with the defendants his check for $15,000.

On the same day the defendants wrote the plaintiff as follows:    ''We, this afternoon, sold your farm of 1,000 acres, more or less, to Mr. L. K. Scroggins of Illinois so as to net you the amount agreed upon between you and ourselves, namely $20 an acre, less $500'' (then follow certain directions as to plaintiff procuring an abstract of title and having a survey made; and then the letter continues:) ''We have a good big check to be presented for payment when you make the deed, which will be as soon as the survey is made. . . . As soon as survey, abstract and deed are made you will get $8,000 or $10,000 cash, and the remainder

of your purchase money March 1, 1899, less six per cent per annum interest from now until March 1st, as interest on the cash payment he now makes. Possession to be given March 1st next. We have in your name gone into a written contract with Scroggins on this sale. Please do not mention price to anyone for that is no one's business but yourself and ourselves, and Scroggins don't want the price known.''

. The plaintiff immediately procured the abstract of title and had the survey made, and on the 20th of October, 1898, he went to the defendant's office and executed his warranty deed conveying 985.82 acres of land to said Scroggins for a recited consideration of $24,645.50.

The revenue stamp placed upon the deed amounted to $25, and the defendants say they called the plaintiff's attention thereto at the time. The defendants further say that the deed was read to the plaintiff by Latney Barnes, who had prepared the same, and when said Barnes read the clause reciting the consideration he stopped and called the plaintiff's attention to the fact that the consideration mentioned in the deed was $25 per acre, and offered to tell him exactly what they were making out of the transaction, but that the plaintiff replied: ''It don't make any difference what you made,'' or ''I have no desire to know what you sold it for.''

On the other hand, the plaintiff denies that any such conversation took place, and says that when he signed the deed, he supposed the sale was at $20.00 per acre, and did not know until nearly a year afterwards, when some neighbor spoke to him about it, and said he heard he had sold it for $25 per acre, that the sale was for more than $20 an acre, and that upon receipt of such information he sent a man to Illinois and ascertained from Scroggins that the price paid was $25 an acre.

The plaintiff further says that when the considera-

tion in the deed was read to him, the defendant, Lakenan, told him that the consideration mentioned in the deed was not the correct consideration, and that after the deed was signed Lakenan remarked to him' that they were making a good thing on the sale of the farm, and that he replied that he did not care what they made, thinking Lakenan referred to the commission the defendants would receive.

On the 25th of October, 1898, the defendants rendered to the plaintiff the following statement of the sale:

"Thomas Harrison, Sr.,
"In account with Lakenan & Barnes,

| | DR. | CR. |
|---|---|---|
| "October 20, 1898, by sale of 985.82 acres of land at $20 per acre ................. | | $19,716.40 |
| To vendor's lien retained on land | $9,320.50 | |
| Discount on advance payment .. | 201.50 | |
| Revenue stamp for deed ....... | 20.00 | |
| Commissions .... ...... ...... | 500.00 | |
| October 25th, 1898, check of L. & B. on Sav. Bank .......... | 9,674.40 | |

"$19,716.40    $19,716.40"

Thereafter Scroggins gave his check to the plaintiff for $9,320. The plaintiff took it to the defendants and delivered it to them, and they gave the plaintiff their check therefor.

Thus the matter stood until December, 1899, when this suit was brought to recover the said balance.

On the trial of the case the plaintiff called Scroggins as a witness and he testified that after he had agreed with the defendant, Barnes, to purchase the land and while on their way from the land to Mexico, Barnes said to him: "It won't make any difference to you to keep this thing still, maybe it will be to your advantage," and he told Barnes it made no difference to him.

The plaintiff tried the case upon the theory that the defendants were authorized to sell the land at not less than $20 per acre, and to have a commission of five per cent of the first $1,000 and two and one-half per cent on the remainder, and that the original contract was never modified, except by reducing the price of the whole tract to $20 per acre, and that the memorandum of July 15, 1898, in the bracketed and italicised clause of the contract, was never made by him or agreed to by him, and was placed in the contract without his knowledge or consent.

The defendants tried the case upon the theory that said modification of July 15, 1898, was agreed to by the plaintiff, and was inserted in the contract with his knowledge and consent. In corroboration of which the defendants referred to their letter of August 20, 1898, in which they said to the plaintiff that they were to account to him at $20 per acre, less a commission of $500, and further referred to the fact stated in the account sales that they charged the plaintiff with only $20 for revenue stamps, whereas they had placed $25 in revenue stamps on the deed, and further referred to the conversation testified to by them as to the consideration named in the deed and when the deed was executed, and accordingly claimed that the contract, as so modified, required them to account to the plaintiff for $20 per acre, less $500 commission, and claimed that whatever they received in excess of that amount belonged to them, and consequently they were under no obligation to notify or inform the plaintiff that the sale was for $25 per acre.

Each party insists that the other was guilty of making many conflicting, contradictory and false statements in their respective testimony, and the case was argued in this court as if such matters were open to review here. It is unnecessary to reproduce in more detail the testimony adduced upon the trial. What is hereinbefore said is sufficient to show the theories upon

which the parties tried the case in the court below, and to indicate that there was substantial testimony to support the theory of each party.

On behalf of the plaintiff the court gave eleven instructions, and on behalf of the defendants the court gave, also, eleven instructions. The defendants also asked ten other instructions which the court refused. The instructions given and refused took a wide range and so far as is necessary those specifically complained of will be hereafter referred to.

At the close of the plaintiff's case and again at the close of the whole case, the defendants demurred to the evidence, the court overruled the demurrers and the defendants excepted.

## I.

The first error assigned is that the petition stated no cause of action, in this, that it does not allege that the defendants were granted authority to collect the purchase money.

This is an action for money had and received and not an action upon a special contract. The gravamen of the petition is that the defendants received $4,907.10 for the use of the plaintiff, and retained the same and refused to pay it to the plaintiff or to account to him therefor.

"The law is that when a person, who has received money for the use of another neglects or refuses to pay it over to his *cestui que trust,* the person entitled thereto may maintain an action against him for money had and received. .  .  .  It is of no importance how the money came into his hands, if the plaintiff is legally entitled thereto. The beneficiaries are legally entitled to recover it of the receiver by an action for money had and received." [Clark v. Bank, 57 Mo. App. l. c. 285.]

One who receives money for the use of another, even without any prior authority to so receive it, is lia-

ble to the person to whose use it was received, and it is no defense that the receiver had no previous authority.

## II.

The second contention of the defendants is that the petition alleges a written contract whereas the proof showed a verbal contract.

If there was any merit in this contention the defendants have not put themselves in a position to insist upon it in this court. They filed no affidavit such as is required under the statute (R. S. 1899, sec. 655), and the point is not therefore open for review in this court. [Fisher Real Estate Co. v. Staed Real Estate Co., 159 Mo. 562.]

## III.

The defendants' next contention is that the trial court erred in overruling the demurrers to the evidence.

There was substantial evidence adduced by the plaintiff tending to establish the allegations of the petition and to support the plaintiff's theory of the case. This, therefore, is not a case of total failure of proof such as is defined in Chitty v. Railroad (148 Mo. 64). There was no error in the ruling of the court in this regard.

## IV.

The fourth error assigned is the action of the trial court in permitting the plaintiff to cross-examine the defendants as to the value of the land and as to the meaning of the letters written by the defendants to the plaintiff.

The trial court admitted the evidence as to the value of the land as bearing upon the wrongful conduct of the defendants in representing to the plaintiff that they could not sell the land for more than $20 an acre,

.and thereby inducing him to agree to a modification to that extent of the contract.

No such issue was properly in the case, but at the request of the defendants the court instructed the jury that if they believed that the plaintiff consented to a modification of the contract as claimed by the defendants, their verdict should be for the defendants. Whatever harm was done to the defendants by the admission of the evidence complained of was neutralized by the instruction asked by the defendants.

As to the cross-examination of the defendants concerning the letters written by them to the plaintiff, it may, also, be properly said that there was no such issue in the case, but it is inconceivable how the defendants were prejudiced thereby. On the contrary, they were thus afforded an opportunity of explaining the meaning of their letters.

The plaintiff would have had a right to object to the defendants' adding anything to their letters explanatory thereof, but how the defendants could be injuriously affected by the plaintiff permitting them, or requiring them, to explain them, does not manifest itself.

## V.

The next error assigned is that no demand, before the action was instituted, was shown.

Section 1575, R. S. 1899, provides that, "It shall not hereafter be available to a party as an objection that no demand for the subject-matter of the suit was made prior to its institution, unless it is expressly set up by way of defense in the answer or replication and is also accompanied with a tender of the amount that is due; in which case, if the plaintiff will further prosecute his suit, and shall not recover a greater sum than is tendered, he shall pay all costs. This provision shall be applicable as well to actions for property as for

money; when property is tendered, the damages for its detention, if any, shall also be tendered."

The defendants in this case set up no such special defense, and made no tender, but on the contrary filed a general denial.

## VI.

Plaintiff's first instruction is claimed to be erroneous, on the ground that it directed the jury in determining the weight and credibility to be given to the testimony of any witness, that they should take in consideration the character of the witness, and because there was no evidence adduced in the case affecting the character or reputation of any witness who testified in the case.

There is a vast difference between the character of a witness and the reputation of a witness. Webster's International Dictionary defines "character,"as follows: "3. The peculiar quality or sum of qualities by which a person or a thing is distinguished from others; the stamp impressed by nature, education and habit; that which a person or thing really is; nature; disposition. 4. Strength of mind; resolution; independence; individuality; as, he has a great deal of character. 5. Moral quality; the principles and motives that control the life; as, a man of character; his character saves him from suspicion. 6. Quality, position, rank or capacity; quality of conduct with respect to a certain office or duty; as, in the miserable character of a slave; in his character as a magistrate; her character as a daughter."

The same author defines "reputation," as follows: "1. The estimation in which one is held; character in public opinion; the character attributed to a person, thing or action; repute. 2. (Law) The character imputed to a person in the community in which he lives. It is admissible evidence when he puts his character in issue, or when such reputation is otherwise part of

the issue of a case." Synonyms given are, "credit; repute; regard; estimation; esteem; honor; fame." Speaking of character and reputation the same author, quoting from Abbot, says: "It would be well if character and reputation were used distinctly. In truth, character is what a person is; reputation is what he is supposed to be. Character is in himself, reputation is in the minds of others. Character is injured by temptation and by wrong doing; reputation by slander and libels. Character endures throughout defamation in every form, but perishes when there is a voluntary transgression; reputation may last through numerous transgressions, but be destroyed by a single and even an unfounded accusation or aspersion."

Instructions embodying the point here involved were given in the following cases: State v. Gee, 85 Mo. 647; State v. Brooks, 92 Mo. l. c. 557; State v. Harrod, 102 Mo. l. c. 598; State v. Hilsabeck, 132 Mo. l. c. 358; and State v. Hudspeth, 159 Mo. l. c. 200. In none of these cases, however, was there any point made as to the jury taking into consideration the character of the witnesses, nor was the question directly discussed, but the correctness of the instruction, in this regard, was tacitly conceded by counsel, and passed unchallenged by the court.

In view of the contentions of each party hereto with respect to the testimony of the other party, it was proper for the court to give the instruction complained of. The jury was a jury of the vicinage and had the parties before them, and could see the witnesses, and also heard, from the accounts of the witnesses concerning themselves, of what manner of men the witnesses were, could observe their individuality, intellectuality and conduct, could read the character of the witnesses from their appearance, bearing and manner. There was no error in the instruction.

## VII.

VII.   The plaintiff's second instruction is charged to be erroneous. This instruction told the jury that the plaintiff was not bound by the insertion of July 15, 1898, unless he ordered, directed or consented thereto, and that if such modification of the original contract was made by the defendants without the plaintiff's consent, it rendered the whole contract void.

In Kelly v. Thuey, 143 Mo. l. c. 434, this court said: "It is the firmly-rooted doctrine of this court, and has been ever since the ruling made in Haskell v. Champion, 30 Mo. 136, that it is not permitted to a payee or obligee to make a change in the paper which he holds, and then assert, when caught, that he meant no harm by it and that it is immaterial. Hitherto we have tolerated no alteration in a contract; and we have always regarded, and still regard, any change on the face of the paper as a nullifying alteration. By this holding we intend to make the payees or obligees of money-bearing or title-bearing obligations honest, whether that disposition accords with their natural inclinations or not."

There is no room for controversy that the insertion of July 15, 1898, in the original contract, was a material alteration of the contract. That authorized the sale of the land at a price different from that fixed in the original contract, and materially increased the amount of commission and profits the defendants might make out of the sale of the land.

The positions and theories of the parties in this case illumine the radical differences between the original contract and the altered one. Those differences were the very matters in issue before the jury. The instruction complained of properly told the jury that unless the plaintiff agreed or consented to the alteration, that act of alteration nullified the whole contract. The converse of that instruction is contained in the de-

fendants' 3rd, 4th, 6th, 8th, 9th and 11th instructions, all of which were given for the defendants by the court.

## VIII.

The plaintiff's third instruction is assigned as error. That instruction proceeds on the same lines as the second instruction above discussed, and is especially complained of because it tells the jury that the plaintiff is not bound by the alteration of July 15, 1898, unless he was present in the office of the defendants at the time the alteration was made, and it is argued, very properly, that the real question is whether he consented to the alteration and not whether he did so in the office of the defendants or elsewhere. Inasmuch as the defendants' whole contention is that the agreement to alter was entered into at the defendants' office, and there is no evidence tending to prove that such alteration was proposed, made or agreed to at any other place, it is difficult to see how the jury could have been misled by limiting the agreement or consent of the plaintiff to the alteration, to matters that occured in the defendants' office. The criticism of the instruction does not commend itself to the impartial mind nor is it tenable in the circumstances of this case.

## IX.

Paintiff's fifth instruction is complained of. The gist of that instruction is, that though the plaintiff gave the defendants authority to sell the land at $20 an acre, still such authority did not excuse the defendants from selling for the best price obtainable and accounting to the plaintiff for the full purchase-price, less such compensation as may have been agreed upon.

The criticism of this instruction is, that it makes the agent exceed the instructions of his principal and makes him liable if he does not do so. The criticism is not tenable. The price fixed for the sale of the land was the minimum price at which the plaintiff was wil-

ling to sell. The obligation of the defendants, under their contract, necessarily was that they would sell at the best price obtainable, and whatever may have been the true arrangement, whether original or amended, between the parties, the plaintiff was entitled to know the truth concerning the sale, and if the plaintiff's version is true, as the jury has found that it was, the plaintiff was entitled to receive the full amount for which the land sold less the commission agreed to be paid to the defendants.

## X.

The plaintiff's seventh instruction is assigned as error. That instruction told the jury that even if they found that the plaintiff signed the original contract, yet if they believed that he never read it, and that in reading it to him the defendants fraudulently deceived the plaintiff as to its true contents by misstating the price as to which the contract recited that the land should be sold, then the contract is not binding on the plaintiff.

The objection urged to the instruction is, that this is not an action for the cancellation of a contract on the ground that it was procured by fraud, and that even if it had been procured by fraud, a court of law has no power to set it aside.

It is true this is not an action to cancel the contract, nor is it an action on the contract. The contract was only a portion of the evidence in the case, and it was proper for the court to tell the jury whether or not it was binding upon the plaintiff. The defendants rely upon the contract as they claim it had been amended, as the corner stone of their defense. The plaintiff's position was that the contract was not binding upon him because he had been fraudulently induced to enter into it by the act of the defendants in not correctly reading it to him, and also that the original con-

tract had been nullified by the unauthorized alteration thereof.

## XI.

The plaintiff's eighth instruction is claimed to be erroneous, on the ground that there is no evidence to support it, that is, that there is no testimony in the case fixing the defendants' commission at five per cent on the first $1,000 and two and one-half per cent on the remainder of the purchase price.

This must be a misapprehension of counsel, for the original contract specified that the commission of the defendants should be the sums named. This was some evidence bearing upon that question.

## XII.

The plaintiff's eleventh instruction is assigned as error. That instruction tells the jury that it is admitted that the defendants received from Scroggins $24,320 and that the plaintiff admits that the defendants are entitled to retain out of that sum a commission of five per cent on the first $1,000, and two and one-half on the remainder; and that if the jury should find for the plaintiff, they should deduct the commission from the amount received and should also deduct $19,019.40, which the plaintiff admitted he had received from the defendants on account of the sale, and the remainder would be the amount due the plaintiff, unless the jury believe that the plaintiff had agreed to give the defendants all they could sell the place for in excess of $20 per acre.

The criticism of this instruction is, that there was no admission either in the pleadings or evidence that defendants had received $24,320.

The petition charges that the defendants had received $24,645.50, that is, $25 an acre, for the land, and the evidence shows that the land was sold for $25 an

acre, and that defendants received $15,000 on the 4th
of October, 1898, and that subsequently the purchaser
turned over to the plaintiff a check or draft for $9,320
and that the plaintiff turned the same over to the de-
fendants, and that the defendants gave the plaintiff
their check for said amount, $15,000, plus $9,320, aggre-
gates $24,320, which is the sum stated in the instruction
complained of. The discrepancy between that sum
and $24,645.50, the true sum due, is nowhere explained
in the evidence, but the defendants were not prejudiced
thereby.

The fact that Scroggins turned over to the plain-
tiff the check for $9,320, and that plaintiff turned the
same over to the defendants, and they gave him their
check therefor, does not, as the defendants contend,
render the instruction erroneous because of the state-
ment therein contained that the defendants received
from Scroggins $24,320. The instruction fairly pre-
sented the matter to the jury.

## XIII.

In his final argument to the jury plaintiff's coun-
sel commented upon the fact that the original contract,
which was before the jury, appeared to be in five dif-
ferent handwritings, and called the jury's attention
specifically to the several parts that appeared to have
been written by different persons.

Defendants' counsel objected to the remarks, the
court overruled the objection, and the defendants ex-
cepted and now assign the same as error.

It is urged that as the attention of the witnesses
was not called specifically to the alleged difference in
handwritings and as there was no evidence that the
contract had been changed in any respect except as to
the alteration of July 15, 1898, the remarks of counsel
were not legitimate argument.

The contract was itself in evidence, and was there-
fore a proper subject for comment or debate with re-

spect to any matter that appeared on the face thereof. Even if the attention of the witnesses had been called to the difference in handwritings contained therein, and even if the witnesses had said that it was written by the same person, or if expert witnesses had so testified, it would still have been the province and duty of the jury to decide the fact as to whether different portions of the contract had been written by different persons or not.

The contentions and theories of the respective parties were distinctly and clearly defined before the jury, and the argument of counsel was a legitimate argument upon the whole facts before the jury.

## XIV.

The refusal of the court to give the defendants' first instruction is assigned as error. That instruction told the jury that if they believed that the plaintiff had authorized the defendants to sell his farm for $23 per acre and to give defendants five per cent on the first $1,000 and two and one-half per cent on the remaining purchase-price, and all over $23 per acre the defendants might sell the plaintiff's farm for, and afterwards authorized the defendants to sell the farm for $20 an acre, then the plaintiff could not recover. There was no evidence to support such a theory, nor was the case tried on such a theory by either of the parties hereto, and therefore the instruction was properly refused.

## XV.

The refusal of the court to give defendants' instructions numbered 2, 5, 6, 7, 8, 9, and 10 is assigned as error. It is unneccessary to reproduce, even in substance, the instructions referred to, or to more specifically refer to them to determine the action of the court in reference thereto than to say, that they either stated propositions which were fully covered by the eleven in-

structions given for the defendants or else they were predicated upon hypotheses which had no foundation in either the facts or the theories upon which the defendants tried their case.

## XVI.

Lastly, it is contended by the defendants that the preponderance of the evidence in their favor is so strong as to show that the verdict is the result of passion, prejudice and partiality of the jury.

It is not the practice of this court to weigh the evidence in law cases. If there is substantial evidence to support the verdict this court does not interfere therewith. [James v. Mutual Life Ins. Co., 148 Mo. 1.] Where a verdict shows on its face that it is the result of passion, prejudice or misconduct of the jury this court has set aside verdicts, but such cases are rare.

The mere fact that the preponderance of the evidence may, in the opinion of this court, be against the verdict, is no foundation for the charge that the verdict is the result of passion, prejudice or misconduct. This court can only read the evidence that is preserved in the record or abstract of the record, and what might appear from that to be a preponderance of the evidence might be a totally erroneous impression, for the preponderance of the evidence does not mean the greater number of witnesses. Many other considerations enter into the calculation as to the preponderance of evidence. The character of the witnesses, their manner and deportment on the stand, their appearance, their character, which nature has stamped upon their countenances, are all matters which enter into the calculation as to the preponderance of the evidence and are matters which the jury and the trial court have before them and which this court does not see.

The testimony in this case is of that character usually found in cases and controversies of the nature

of this case, and the manifest bitterness of the parties exhibits itself in every line of the record. This case is a stiking illustration of the wisdom of the rule or practice of this court that leaves the determination of controverted questions of fact to the jury.

With the findings of fact in this case in favor of the plaintiff, and failing to find any prejudicial error in the law of the case as applied by the trial court, it follows that the judgment herein must be affirmed. It is so ordered.

All concur.