## C. B. STRINGER, Respondent, v. THE GEISER MANUFACTURING COMPANY, Appellant.

Springfield Court of Appeals, April 14, 1915.

1. **CONTRACTS: Parol Evidence to Impeach Written: When Admitted.** Fraud, accident and mistake in the making of a contract can be shown by oral testimony, whether it goes to a mere recital in the contract or to any other provision in the instrument.

2. **————: ————: When.** Parol evidence is admissible to impeach an instrument for an alteration or to prove that blanks had been filled out contrary to directions.

3. **CHATTEL MORTGAGES: Alteration Without Consent: Results in Invalidity.** A chattel mortgage is annulled when it is altered without the consent of the mortgagor by inserting notes therein, and a foreclosure is thereby prevented.

4. **APPEAL AND ERROR: Motion for New Trial: Saving Exceptions: Evidence.** Where appellant did not preserve a point in

189MA22

his motion for a new trial on the inadmissibility of certain evidence, he cannot on appeal raise such question.

5. **CONVERSION: Damages: Measure.** The value of the property at the time of its conversion is the measure of damages for conversion of same.

Appeal from Webster County Circuit Court.—*Hon. C. H. Skinker*, Judge.

AFFIRMED.

*G. C. Dalton* and *W. R. Baxter* for appellant.

(1) Parol evidence is not admissible to show that a less sum is due the mortgagee than is recited in the mortgage. Patchin v. Pierce, 12 Wen. (N. Y.) 61. (2) Whenever the consideration, of a written instrument, goes beyond mere recital and becomes contractual, thereby creating and attesting right, it cannot be varied, by parol testimony. Davis v. Gann, 63 Mo. App. 429. (3) One dealing with an agent cannot assume that the agent is authorized to bind his principal by an act beyond the implied authority of the agent. And the agent here had no implied authority to accept anything but money in payment on Hubbs and Asbridge notes. And any statement made by the agent, if made, certainly would not bind the defendant and further it could not work any hardship on the plaintiff, for his status was fixed before that time. Reinhart Grocery Co. v. Knuckles, 155 S. W. 1105; Wheeler & Wilson Mfg. Co. v. Givan, 65 Mo. 89; Mechem on Agency, sec. 376; Latham v. First Nat'l Bank, 122 S. W. 992.

*Wm. P. Elmer* and *John M. Stephens* for respondent.

(1) The mortgage dated September 9, 1907, had been altered by inserting therein indebtedness not agreed upon and inserted without the knowledge or

consent of the makers of the mortgage. The whole instrument thereby became void. Any material alteration of a contract voids it, and testimony showing such alteration is not objectionable on the ground that it varies a written contract. It is a fraud, which was pleaded in plaintiff's reply. Glenn v. Glenn, 87 Mo. App. 377; Hendricks v. Hendricks, 84 Mo. App. 27; Rothwell v. Jamison, 147 Mo. 601; Freland v. Williamson, 220 Mo. 217; 2 Am. & Eng. Ency. Law, page 184. (2) Any material alteration of a written contract avoids it. Harrison v. Lakeman, 189 Mo. 581; Koons v. St. Louis Car Co., 203 Mo. 227; Taylor v. Sartorious, 130 Mo. App. 23. (3) The contract was void as to plaintiff as well as Hubbs and Asbridge. He was recognized by defendant as Hubbs and Asbridge's vendee and was a privy under the true contract between defendant and them. Plaintiff did not assume a different contract from the one actually made, and could not be bound by an instrument void as to his vendors. A material alteration of a mortgage annuls it and prevents a foreclosure of the same. 2 Am. & Eng. Ency. Law, page 188. (4) No recovery can be had on the altered instrument. Id., page 187.

FARRINGTON, J.—This was a suit for the conversion of certain machinery, resulting in a judgment for the plaintiff. The case was here on appeal last year (177 Mo. App. 234, 162 S. W. 645) and in the opinion written at that time may be found a full statement of the facts developed in the trial in the circuit court of Dent county. When the case was remanded to the Dent county circuit court a change of venue was allowed at the instance of the defendant. The case was sent to Webster county where another trial resulted in a judgment for $1000 in favor of the plaintiff, and defendant appealed. We refer to the former opinion as stating the main facts of the case and will in this opinion set forth only enough of the additional

facts brought out as is deemed necessary to decide the questions raised on this appeal.

At the trial in Webster county the plaintiff set up in reply to defendant's answer affirmative matter charging that the first four notes described in the chattel mortgage for $275 each were placed therein after it had been signed, executed and delivered by Hubbs and Asbridge to W. D. Gilstrap, the agent of the defendant; that the amount represented by the four $75 notes was represented by other notes described in the chattel mortgage, and that all the other notes described in the chattel mortgage were properly placed therein when it was executed by Hubbs and Asbridge, and that all this indebtedness had been fully paid and discharged. We quote a portion of the reply that is pertinent to the discussion: "That after the execution and delivery of the said chattel mortgage to the said W. D. Gilstrap, as agent for the defendant, and to the said defendant, that the said chattel mortgage was, without the knowledge and consent of the said B. B. Hubbs and W. N. Asbridge wrongfully and fraudulently changed and altered; and that there were other notes, which had been prior to that time executed by W. N. Asbridge and B. B. Hubbs, inserted in said chattel mortgage, and particularly four notes dated June 3, 1907, for $275 each were inserted in said chattel mortgage after the execution and delivery thereof to the said W. D. Gilstrap, and without the knowledge and consent of the said B. B. Hubbs and W. N. Asbridge."

The court refused all the instructions offered by plaintiff and defendant and submitted the issues on two instructions given of its own motion, one of which told the jury that nine might agree on a verdict. The other instruction given is as follows:

"The court instructs the jury that it stands admitted in this case that on February 1, 1912, the plaintiff was in the possession of and claimed to own the following described property, to-wit: one Peerless trac-

tion engine; one Peerless separator; one Peerless sawmill; one fifty-inch Atkins saw; one wind stacker; 150 feet four-ply belt; one tank pump and water tank; and the tools and belts used with same; in Dent county, Missouri, and on or about said date the defendant took and converted said property to its own use and that the defendant took said property under a chattel mortgage executed to defendant by B. B. Hubbs and W. N. Asbridge upon said property and that the defendant claims that said chattel mortgage was given to secure the payment to defendant of four notes dated June 3, 1907, for the sum of $275 each, and also certain notes dated September 9, 1907, for the aggregate sum of $1050, all signed by Hubbs and Asbridge.

"You are, therefore, instructed that if you believe and find from the evidence that at the time said chattel mortgage was signed, executed and delivered by said Hubbs and Asbridge to the defendant, or defendant's agent, that it did not describe said four notes for the sum of $275 each, but that after said mortgage had been so executed and delivered by the said Hubbs and Asbridge, it was altered by the writing in of the description of said $275 notes, then you should find the issues for the plaintiff, and assess his damages at such sum as the evidence shows said property was reasonably worth at the time it was taken and converted by the defendant, not to exceed the sum of $2500.

"If, on the other hand, you believe and find from the evidence that said four notes for $275 each were mentioned and described in said chattel mortgage before it was executed and delivered by said Hubbs and Asbridge to the defendant, or its agent, then the said chattel mortgage was a valid lien upon said property and the defendant had a right to take said property from the plaintiff under said mortgage and sell it for the payment of said note, and you should, in that event, find the issues for the defendant."

It can be seen that the only issue put to the jury was to determine whether the four $275 notes were referred to in the chattel mortgage at the time Hubbs and Asbridge signed and delivered it to the defendant, or whether they were inserted in it afterwards, and without their knowledge and consent an alteration was made.

The testimony of Hubbs was that he and Asbridge bought the engine and threshing machine from one Cook and gave in payment therefor four $275 notes— which was the amount Cook owed the defendant when they purchased—and that some time after that they also bought from the plaintiff a saw rig costing something like $350. It is further shown that the fourteen horsepower engine which they bought from Cook and which had been sold to Cook by the defendant did not come up to its guarantee and that because of this it was exchanged for a sixteen horsepower engine, and that at the time the mortgage was made under which defendant took the property involved in this suit the total balance due on the four $275 notes, plus the additional machinery which they purchased, including the exchange of the sixteen horsepower engine, amounted to $1050—some cash having been paid by them to the defendant prior to the giving of this chattel mortgage. That the mortgage under which the defendant took the engine, saw rig and separator was given only to secure notes described therein aggregating this $1050 which was all they owed and all that the mortgage created a lien for. That this amount was by Hubbs and Asbridge paid down to $800, at which time they sold the outfit to the plaintiff, the latter taking the machinery, according to his agreement with them, subject to the $800 balance due under the mortgage. And in order that Hubbs and Asbridge be secured, they took a mortgage on some land belonging to plaintiff's father to assure the payment of the $800. A settlement was made by Gilstrap, the agent, at which Hubbs and

Asbridge, the plaintiff, plaintiff's father, and Mrs. Stringer, were present. All these witnesses say positively that they called on Gilstrap, the agent of the defendant who had the matter in charge and the notes for collection and who had been the agent throughout all the dealings had, and asked him to figure up the balance due his company, which stood in the mortgage as unpaid so that it could be paid off and the machinery released from the mortgage. They testified that this agent did so and demanded a balance of $480 which was paid by the plaintiff and his father; and that when this was done they went to the courthouse for the purpose of releasing the mortgage under which defendant justifies the taking of the machinery, and that the said agent then ascertained there was one of the $100 notes which he did not have with him and therefore it could not be presented to the recorder and a release of this mortgage effected. It is, however, a significant fact that Hubbs and Asbridge who had taken a mortgage on land belonging to plaintiff's father to secure them for the balance due from them to defendant under the chattel mortgage did release the father's land from the payment of the $800 balance. Hubbs further testified that when he executed the chattel mortgage he read it over carefully and that it did not contain a description of the four $275 notes; and in all this he is corroborated by Asbridge, the other signer of the mortgage. As to the occurrence of the demand for a balance of $480, and the going to the courthouse to release the mortgage, he is corroborated by several of these witnesses.

The first assignment of error is as follows: "The court erred in allowing plaintiff to introduce parol testimony to vary the terms of the chattel mortgage and contract for the machinery." And we are cited to the former opinion in this case, and to Patchin v. Pierce, 12 Wend. (N. Y.) 61, Davis v. Gann, 63 Mo. l. c. 429, and Jackson v. Railway Co., 54 Mo. App. l. c.

645. Only a casual reading will reveal that these authorities support plaintiff's theory rather than that of the appellant because they each recognize the well-known rule that fraud, accident and mistake in the making of a contract can be shown by oral testimony, and this, whether it goes to a mere recital in the contract or to any other provision in the instrument. Here, the question was whether these four $275 notes had been placed in the mortgage after it left the hands of Hubbs and Asbridge. The rule as to alterations is stated in 2 Cyc. 246 as follows: "Parol evidence is admissible to impeach an instrument for an alteration (the rule which excludes such evidence when offered to vary a written contract having no application), or to prove that blanks have been filled contrary to directions." The jury found squarely that there had been an alteration which would annul and prevent a foreclosure of the mortgage. [Harrison v. Lakenan, 189 Mo. 581, 88 S. W. 53; Koons v. St. Louis Car Co., 203 Mo. 227, 101 S. W. 49; 2 Am. and Eng. Ency. Law, 187, 188.]

Appellant is in no position to question the admissibility of any evidence as no such point is found preserved in the motion for new trial. [Spaulding v. City of Edina, 122 Mo. App. 65, 97 S. W. 545; Needles v. Ford, 167 Mo. 495, 67 S. W. 240.]

Granting that "the court erred in allowing plaintiff to give testimony of a conversation he claims to have had with an agent of defendant to the effect that the debt was paid except about $480," although an estoppel was pleaded in the reply, still we think the evidence complained of tended to throw some light on the question of alteration in view of the fact that such agent was the man who drew the mortgage and was the man to whom it was delivered and the man who had attended to all the business in this connection for the defendant; and it further developed that when the $480 was paid and they started to the courthouse to

release the mortgage entirely, the agent at that time ascertained that he had failed to bring one of the $100 notes, and that that was all that prevented a full release at that time. Neither did the instruction predicate a recovery on the ground of estoppel.

The case was fairly tried and fairly submitted to the jury on the question of alteration. The amount of the verdict is supported by the evidence, and the time of fixing the value of the machinery was properly stated in the instruction—at the time of the taking or conversion thereof—and the evidence as to its value on that date was sufficient to sustain the verdict as to the amound found. We think the case was tried properly and that the verdict was for the right party. The judgment is accordingly affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.