R. J. GRAHAM et al., Appellant, v. J. G. WOMACK, Respondent.

**Kansas City Court of Appeals, February 5, 1900.**

1. **Landlord and Tenant: POSSESSION: VOID LEASE: OUSTER.** Where tenant's lease has been forfeited but he remains in possession neither the landlord nor his subsequent lessee can forcibly eject him but must resort to legal process to gain possession.

2. **Injunction: LAND TITLE: EJECTMENT: ACTION.** An injunction will not lie as an original proceeding to try the title of land and mines thereunder though it may be resorted to as an auxiliary remedy to ejectment which is the proper action.

3. ————: **POSSESSION: INSOLVENCY: TRESPASS.** Where the landlord has clear right to the possession and is insolvent and threatening irreparable injury, his trespass may be restrained; and much more so where plaintiff is in possession, whether defendant is solvent or insolvent.

Appeal from the Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

REVERSED (*with directions*).

*F. M. Redburn* and *J. W. McAntire* for plaintiffs.

(1) The plaintiffs being the lessees of the owner in possession had no adequate remedy at law, and could resort to a court of equity. High on Inj. [3 Ed.], sec. 702; Wilson v. Mineral Point, 39 Wis. 160; Wren v. Walsh, 57 Wis. 98; Johnson v. Rochester, 13 Hun. 285; Newaygo v. Railway, 64 Mich. 114. (2) The defendant's continued trespasses and tearing up posts, coupled with threats of continuing such removal, he being insolvent, would warrant relief by injunction as well as upon the ground of inadequacy of the legal remedy, as for the prevention of a multiplicity of suits.

Turner v. Stewart, 78 Mo. 480; High on Inj. [3 Ed.], sec. 702; Owens v. Crossett, 105 Ill. 354; Crescent City v. Simpson, 77 Cal. 286. (3) The defendant is shown to have been threatening and intimidating the employees of plaintiffs, and using unlawful means to force them to quit work. Under such circumstances injunction was the proper remedy. Shoe Co. v. Saxey, 131 Mo. 212; Turner v. Stewart, 78 Mo. 480. (4) Injunction is the proper remedy to prevent injury to or destruction of one's lawful business by the wrongful conduct of others. The general ground for the jurisdiction of equity in such case is that the injury can not be fully compensated by an action at law. In such case the damages are incapable of any fair estimation. Railroad v. Springfield, 85 Mo. 674; Railroad v. Railroad, 69 Mo. 65; Glassner v. Anheuser-Busch Ass'n, 100 Mo. 508; Schopp v. St. Louis, 117 Mo. 131. (5) The court should have granted the injunction and made it perpetual. Sherry v. Perkins, 147 Mass. 212; Murdock v. Walker, 152 Pa. St. 595; United States v. Elliott, 64 Fed. Rep. 27.

*T. B. Haughawout* and *J. C. Trigg* for respondent.

(1) The defendant was in exclusive possession of the land in controversy under color of right, from June, 1897, to May, 1898, prospecting the same for mineral ores, etc. Under these circumstances the injunction will not be allowed except upon a very strong showing. High on Inj. [3 Ed.], sec. 731. (2) Injunction will not lie as an original and independent proceeding to determine title to lands and mines laid thereunder, where the same are held by defendant under claim and color of title. High on Inj. [3 Ed.], 732; Smith v. Jameson, 91 Mo. 13. (3) In a case like the present an action of ejectment would be an appropriate remedy to test the right and try the title to the disputed land in question; and in such an action, and as auxiliary thereto, if the facts warranted it, and under proper averments, an injunction,

*pendente lite,* might be appropriate and amply secure all the just rights of the plaintiffs in the premises. Smith v. Jameson, 91 Mo. 13; Janney v. Spedden, 38 Mo. 395; Majors Heirs v. Rice, 57 Mo. 385; More v. Perry, 61 Mo. 174; Tamm v. Kellogg, 49 Mo. 119.　(4) The foundation of the jurisdiction of equity by injunction in this class of cases rests in the probability of irreparable injury, the inadequacy of pecuniary compensation, and the prevention of a multiplicity of suits; and where facts are not shown to bring the case within these conditions, the relief will be refused. High on Injunction [3 Ed.], sec. 697.　(5) The defendant being in exclusive possession of the land in controversy at the time of the attempted entry of the plaintiffs thereon, and no irreparable injury having been shown, the authorities relied upon by the plaintiffs do not apply. Equity will not enjoin a mere trespass to realty as such, in the absence of any element of irreparable injury. High on Inj. [3 Ed.], sec. 697; German v. Clark, 71 N. C. 417; Smith v. Gardner, 12 Ore. 221.　(6) In the case of trespass against mines, the injury must be something more than a mere fugitive and temporary trespass, for which adequate compensation could be obtained in action at law; it must be an injury to the *corpus* of the estate.　Sedgwick & Wait, Trial of Title to Land [2 Ed.], sec. 626; High on Inj. [3 Ed.], sec. 731.　(7) So it is proper to refuse an injunction, when plaintiffs' right is by no means clear and when his remedy at law is adequate; and when defendant is in possession under claim of title made in good faith, it is proper to leave the parties to their remedy at law to determine the question of title. High on Inj. [3 Ed.], sec. 732.

SMITH, J.—This is a suit in equity.　The petition contained, amongst others, the following allegations:

That said defendant daily enters upon said premises and by threats and intimidations has driven the men employed by plaintiffs from said premises; that said defendant has threat-

ened great violence to men employed by plaintiffs in conducting mining operations on said premises, by cursing and abusing them, and threatening their lives if they continue to work on said premises. That by his willful and wrongful acts, he has driven the plaintiffs' employees from said premises, and by his threats and intimidations has compelled plaintiffs to desist from lawfully pursuing mining operations on said premises, greatly to their injury and damage. That said defendant is wholly insolvent and that the injuries complained of are irreparable, and that the plaintiffs have no adequate remedy at law. Wherefore, plaintiffs pray that said defendant may be enjoined and restrained from going upon said premises, and from disturbing and interfering with the plaintiffs and their employees in the prosecution of mining operations thereon, and for such other and further relief as may seem meet and necessary in the premises.

The facts of the case, as disclosed by the evidence, are these: Mitchell executed a written ten year lease to Kane of a certain forty acre tract of land which contained a number of provisions, one of which was that Kane or his assignees should immediately commence the work of mining on said land, cause the same to be done for lead and zinc ore in good faith, and place certain mining machinery, pumps, etc., on said land so as to efficiently mine the same. Another required Kane to mine said land in a workmanlike manner, to prospect the ground continuously and to be idle at no time more than thirty days, etc. And there were still others to the effect that a failure to comply with the requirements of the lease in good faith at any time should terminate it and that Kane could, on giving thirty days notice in writing, surrender the lease, etc.

It seems that there were others interested in the lease with Kane, though he was the only lessee therein named. On July 27, 1897, Kane and his associates executed a written assignment to defendant of a one-fourth interest in the lease from Mitchell to Kane. It was therein recited that in consideration

of the assignment of the interest in said leasehold that defend-
ant should immediately commence the work of prospecting
said land for lead and zinc ores and continuously, diligently
and in good faith prosecute the same for six months, or, until
pay ore was developed.    There was also a provision therein
that a failure on the part of defendant to comply with the
requirements of the contract in good faith should be deemed
an abandonment of it and that the assignors and lessors on
giving fifteen days notice in writing could declare the contract
terminated.

The defendant was placed in possession of the *locus in
quo* and during the succeeding six or seven months made a plat
thereof, subdividing it into mining lots, sunk three or more
shafts therein and sublet some of the lots to others.    But it
seems that the prospecting thereon was not carried on con-
tinuously or diligently, as required by the provisions of the two
leases.    Indeed, all the work done thereon could probably have
been performed in a few days, or weeks, at most.    Mitchell,
the original lessor and owner of the fee became dissatisfied
with the failure on the part of Kane and his assignee and sub-
lessee, the defendant, to comply with the requirements thereof
and demanded a surrender of the lease.

Kane and his associates in the meantime vainly endeav-
ored to induce the defendant to comply with his contract.    A
compliance by the defendant with his contract with Kane and
his associates would have been as well a performance of the
original lease by Mitchell to Kane, since the requirements of
the two were the same in respect to the prospecting and
mining operations on the land.    Kane and his associates, in
September and November, 1897, gave the defendant written
notice that unless he commenced work and diligently and con-
tinuously proceeded with the same as required by his contract
that they would be compelled, in order to protect their own
interests, to declare such contract forfeited and terminated.
In the month of March, 1898, Kane surrendered the lease to

Mitchell; and at about the same time the former and his asso-
ciates formally declared their assignment and lease contract
with defendant terminated. There was evidence tending to
prove defendant had notice of the action taken by his lessors.

In May, 1898, Mitchell executed a written lease of said
land to the plaintiffs, who immediately thereafter entered upon
the same and began the prosecution of their mining operations.
At the very threshold of their entry they were met by de-
fendant who warned them not to proceed with their contem-
plated mining operations. Although the defendant, accord-
ing to his testimony, had on the land some machinery, mining
tools, etc., and that he, with others under him, were engaged
in sinking one or more shafts, the plaintiffs did not heed his
warning. The defendant further testified that plaintiffs went
into possession of the land against his expressed will and com-
pelled his licensees and tenants to recognize them as licensors
and tenants to recognize them as licensors and lessors. The
plaintiffs had the land surveyed and platted. The defendant
twice pulled up and threw away the stakes set by the surveyor
to indicate the corners of the plaintiffs' subdivisions of the
land. The defendant persisted in asserting and maintaining
his right to the possession and strenuously insisted that that
right was superior and paramount to that of the plaintiffs.

A reading and consideration of the evidence has con-
vinced us that the lease under which the defendant made claim
to the possession had been forfeited and terminated. Kane's
lease had been surrendered; it was no longer in force. This re-
sulted from defendant's own delinquencies. He had failed to
perform the conditions of the contract which he had entered
into with Kane and others. As to whether or not the defendant
was still in possession at the time of the plaintiffs' entry the evi-
dence is quite conflicting. If the defendant was still in pos-
session then neither Mitchell nor the plaintiffs claiming under
him could forcibly eject him, even though he was holding over
after his right under his contract had terminated. The plain-

tiffs could not in such case take the law into their own hands. They would be compelled to resort to legal process to gain possession. Craig v. Donnelly, 28 Mo. App. 342; Greenleaf v. Weakley, 39 Mo. App. 191; Sitton v. Sapp, 62 Mo. App. 197. It is conceded that defendant was wholly insolvent.

The question now is, whether the plaintiffs claiming under a valid lease, though out of possession, were entitled to the injunctive process of the court against the insolvent defendant, who was in the actual possession? Injunction will not lie as an original independent proceeding to determine the title to land and mines located thereunder when held by defendants under claim of right or color of title. Ejectment is the appropriate remedy in such case. Injunction *pendente lite* may be granted auxiliary to such action. Smith v. Jameson, 91 Mo. 13. In Thomas v. Hukill, 131 Pa. St. 298, a case, on its facts, bearing a close analogy to the present, it was held that where a bill in equity was filed by a second lessee of oil lands, out of possession, alleging a forfeiture incurred by a prior lessee in possession for a failure to perform his covenants, praying for an injunction to restrain further operations, etc., it was not error to dismiss the bill, the plaintiff having an adequate remedy at law. That case is only distinguishable from this in the fact that there, the defendant was not alleged or shown to be insolvent, while here, he was. The reason therefore for denying the injunction there does not obtain here.

Assuming that the plaintiffs were not in the possession yet, as they show what seems to be a clear right thereto under their lease, we can see no reason, since the defendant is insolvent and threatening the irreparable injury alleged in the petition, why he may not be restrained by injunction. But if the defendants had abandoned the possession before the plaintiffs' entry and the latter were in possession at the time of the commencement of the suit, as the evidence of the plaintiffs tend to prove, there can be no question as to the right of

the plaintiffs to injunctive relief.   If the insolvent defendant should repeatedly enter upon the land and dig up and carry away the valuable minerals therein, commit the other threatened injuries complained of and being unable to respond in damages, most obviously the plaintiffs would have no adequate legal remedy.   Sills v. Goodyear, 80 Mo. App. 128; Boeckler v. Railway, 10 Mo. App. 448; James v. Dixon, 20 Mo. 79; Echelkamp v. Schrader, 45 Mo. 505; High on Injunctions, sec. 717; Beach on Injunctions, secs. 37, 40, 11, 34.

And even if the defendant were not insolvent injunction would lie in such case.   Turner v. Stewart, 78 Mo. 480; and the cases therein referred to; Shoe Co. v. Saxey, 131 Mo. 212.

In any view of the case which we are able to take we think that the plaintiffs are entitled to the relief they seek, and we shall therefore reverse the decree of the court below dismissing the plaintiff's petition and direct a decree to be entered there for the plaintiffs in conformity to the prayer of their petition. All concur.