## BERTHA E. SHEETZ, Respondent, v. JAMES N. PRICE, Appellant.

### Kansas City Court of Appeals, April 3, 1911.

1. **INJUNCTION: Destruction of Property: Hindering Use.** Plaintiff and defendant entered into a written contract whereby many obligations one to the other were assumed. Plaintiff owned a farm upon which she was to build a dairy barn and construct hog houses, and to furnish material for fences which defendant was to build. Plaintiff was to furnish dairy implements, cows for dairy purposes, as well as certain horses, hogs and chickens. Defendant was to reside on the farm as manager and was to have charge of the property and to be paid by certain parts of the proceeds of sales. The contract was to continue for three years, with the right for either party to terminate it at the end of any one year by giving sixty days' notice. On the contract being terminated at the end of the first year, and defendant, who was insolvent, refusing to allow plaintiff to care for her crops and her stock which threatened their destruction, it was *held* that injunction was a proper remedy.

2. **CONTRACT: Construction: Inadvertent Word.** Where a word in a written contract was without meaning and was shown to have been inserted inadvertently by the copyist, it was *held* to be proper to disregard it.

3. **———: Rescission: Consideration.** Parties to a written contract which involves mutual obligations from each to the other, may rescind it by verbal agreement and the mutual release of such obligations is a sufficient consideration.

Appeal from Grundy Circuit Court.—*Hon. G. W. Wanamaker,* Judge.

AFFIRMED.

*Hall & Hall* and *L. A. Warden* for appellant

*E. R. Sheetz, E. M. Harber* and *A. G. Knight* for respondent.

ELLISON, J.—This action, begun the 13th of September, 1910, is founded on a bill for an injunction. The

issues were found for the plaintiff and defendant appealed in due course.

It appears that plaintiff owned ninety acres of farm land and defendant's father-in-law owned ten acres adjoining it which plaintiff bought. Defendant was living on the latter place and had some machinery equipment for a dairy as well as some cows, hogs and chickens. The parties, after some preliminary talk, finally made out and signed a written paper, dated the 21st of September, 1909, setting forth a somewhat complicated agreement between them, which, while not a contract of partnership, did involve mutual interests, responsibilities, expectations and hoped-for profits to each. The chief object to be attained by the agreement seemed to be the establishment of a dairy. To that end plaintiff was to fence the outside of the farm, but inside fences, as planned for dairy purposes, were to be built by plaintiff furnishing the material and the labor to be furnished jointly. Plaintiff was to have a well dug, a cow barn and dairy house built, and hog sheds constructed, as well as to furnish and keep in repair a dwelling house for defendant's occupancy. She was likewise to furnish all cows from time to time as specified and also work horses and farming implements. She was also to buy, and did buy, of defendant certain of his stock, at a price agreed upon in the writing, as well as certain "dairy appliances" owned by defendant. It was stipulated that defendant should live upon the land as "manager," but that the possession thereof should remain in the plaintiff. Other provision was made for the operation of the contract which did not, in any wise, tend to reduce its complications or to lessen the certainty of future disputes. Then followed this: "It is agreed that the cash income from said land and business will be divided equally between the parties hereto, said income including the proceeds from the sale of milk, butter, eggs, hogs, cattle, chickens, buttermilk and fruit and all cash income produced by said land."

The close of the writing contains this: "It is agreed that this contract shall be in force for three years. It is agreed that sixty days prior to the end of *such* year under this contract, that either party may terminate it by giving verbal or written notice."

The word "such" that we have italicized, was claimed by plaintiff to be a clerical error for the word "each," and this has been a theme of earnest controversy between the parties. It is an important dispute; because in the following July, 1910, plaintiff gave defendant written notice that the contract was to end on the expiration of the first year, to-wit: September 21st, 1910. Plaintiff's claim is that in the original draft of the contract the word was "each" and that by mere inadvertence of the stenographer in copying off onto the paper which was signed, it was written "such." Defendant says that the word was intentionally used, and that it referred to "such last year of the contract." We think the trial court clearly right in accepting plaintiff's view. If defendant's theory were correct there would have been no need of any provision, as the contract expired by its own limitation at the end of the third year, without notice.

But whatever may be the fact as to the right to terminate by written notice, it was sufficiently shown that afterwards the parties met and by mutual consent rescinded the contract. Defendant challenges the legal sufficiency of such rescission on the ground of no consideration. Authority is cited which properly holds that the voluntary giving up or surrender of valuable rights under a contract is of no effect unless supported by a consideration. But such authority is not applicable here. We have already seen that the contract contained many stipulations and involved many onerous obligations each party was to perform. A mutual release of these, each to the other, afforded ample consideration to each for the rescinding agreement. [Seligman v.

Rogers, 113 Mo. 642, 658; Creamery Pkg. Co. v. Sharples Co., 98 Mo. App. 207.]

In this condition of affairs, plaintiff charged in her bill that defendant refused to leave the premises; that he chained and locked the gates leading into and about the premises, so as to destroy the use thereof to plaintiff. That he refuses to allow plaintiff's servants to milk the cows; that he refuses to allow plaintiff or her servants to care for the crop, whereby it will go to ruin; that he refuses to allow her servants to use her building which she erected, and threatens to continue such trespass until plaintiff shall pay him certain unfounded claims for money. It is then alleged that defendant is insolvent and wholly unable to respond in damages for his wrongful and unlawful conduct; that such damages are irreparable and that she has no adequate remedy at law. The prayer is that defendant be restrained from his illegal acts and the destruction of plaintiff's property and for all further proper relief.

As stated at the outset, the action was brought on September 13th, when the end of the first year for which notice of termination of the contract was given, was not until the 21st of that month. On this account defendant contends the action was premature. That would have been true if the parties had not rescinded the contract, which, as we have just shown, they could legally do. The court having properly held the evidence showed a rescission, it followed that the bill was not filed prematurely.

It is however earnestly urged that injunction was not the proper remedy for plaintiff's grievance. We think it manifest that it is. Plaintiff's property was in the hands of defendant and he was using it and threatened to continue to use it in such way as to practically destroy it. In the peculiar situation of the parties and the location and nature of the property, injunction was the only way open to plaintiff to protect her interests.

154 App—37

[Musser v. Brink, 80 Mo. 350; Graham v. Womack, 82 Mo. App. 618; Metropolitan Land Co. v. Manning, 98 Mo. App. 248.]

The trial court, in our opinion, drew proper conclusions from the evidence, and the judgment will accordingly be affirmed. All concur.