KATE H. FURRER v. JOSEPH HAUPT, Appellant.—49 S. W. (2d) 53.

Division One, April 2, 1932.

*Henry G. Trieseler* for appellant.

*Earl M. Pirkey* and *Milton F. Napier* for respondent.

FRANK, J.—Action for specific performance of two oral contracts to convey two separate pieces of real estate located in the city of St. Louis. The petition contains two counts. The decree went for plaintiff on both counts of the petition and defendant appealed.

The sufficiency of the petition is not challenged. The first count alleges, in substance, that defendant and his brother John Haupt owned the real estate described in count one of the petition together with a building located thereon, in which they operated a garage; that they agreed to sell said real estate and building to plaintiff for the sum of $20,000, and said garage business including the personal property and machinery in said garage for the sum of $15,000; that with the knowledge and consent of defendant and his said brothers, plaintiff took possession of said property, expended the sum of $6,500 in improving said real estate and building and has been in possession thereof and paid all taxes thereon since the date of said contract of sale; that John Haupt died in October, 1925, but before his death he conveyed all his alleged interest in said property to defendant, Joseph Haupt; that plaintiff has paid the sum of $20,000, the full purchase price of said real estate, and has demanded that defendant deed said property to her but he has failed and refused to do so; that prior to John Haupt's death, he and defendant took said personal property and machinery into their possession, sold and disposed of same and released and discharged plaintiff from any other or further obligation or payment on account of said personal property.

The answer to count one alleges that on November 7, 1914, defendant and his brother John Haupt did agree with plaintiff to sell her the real estate described in count one of the petition and at that time deeded said property to her with the understanding that she would procure a loan thereon and pay the balance of the purchase price thereof; that shortly thereafter plaintiff notified defendant and his brother that she was unable to procure the loan and at that time deed the real estate back to them; that it was thereupon agreed that plaintiff might continue in possession of said real estate and continue to make payments upon the purchase price until the entire purchase price of $20,000 and interest was fully paid, at which time the property would be deeded to her; that defendant has at all times stood ready and willing to deed said property to plaintiff upon payment of

the purchase price but that plaintiff still owes in excess of $9,200 on said purchase price which she failed and refused to pay.

Further answering the first count and by way of counterclaim it is alleged that on January 1, 1917, plaintiff by oral agreement purchased from defendant and his brother said garage business, including tools, machinery, stock on hand and good will for the sum of $15,000; that up to July 1, 1919, plaintiff had paid on said purchase price the sum of $4,000; that on October 15, 1919, at the request of plaintiff, defendant and his said brother took charge of and operated said garage business until February 27, 1921, at which time it was mutually agreed that they should sell said tools, machinery and equipment in said garage and credit the amount received therefor on plaintiff's indebtedness; that they did sell same for $5,600 and credited said amount on said indebtedness, leaving a balance due thereof on February 27, 1921, the sum of $5,390 of the principal debt together with $2,640 interest; that at the request of plaintiff, defendant managed said garage business for a period of four years, from January 1, 1917, to February 27, 1921; that the reasonable value of his services was $9,600. Judgment is asked on the counterclaim in the sum of $17,600 with 6 per cent interest thereon from February 27, 1921.

Appellant's first contention is that there was a failure of proof, in that the evidence established a different contract from that pleaded in the petition.

Both the petition and the answer allege that on November 7, 1914, defendant and his brother, John Haupt, agreed to sell to plaintiff the real estate described in the first count of the petition for $20,000. The evidence of both parties shows that this contract of sale was made, but that it was made in 1917 instead of 1914 as alleged in the pleadings. The contention of appellant is that the discrepancy between the petition and the evidence as to the date of the making of the contract is not a mere variance but is a total failure of proof. We do not so regard it. The petition, answer and evidence are all in accord that defendant and his brother agreed to sell this land to plaintiff for $20,000. The terms of the contract were proven as alleged. The fact that the evidence showed the contract was made in 1917, instead of 1914, as alleged in the petition, was not a failure of proof but was a mere variance which did not affect the substantial rights of defendant and was of no consequence to him so long as he was not misled thereby in the defense he was required to make. [Sonnenfeld v. Rosenthal, 247 Mo. 238, 267-8, 152 S. W. 321.] There is nothing in the record showing that defendant was misled in any way, but if there was defendant would be in no position to insist upon it here. The statute provides that no variance between the pleading and proof shall be deemed material unless it has misled

the adverse party to his prejudice, and when it is alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, by affidavit showing in what respect such party has been misled. [R. S. 1929, sec. 817.] There was no affidavit filed in this case, hence, the variance between the pleading and the proof as to the date of the contract must be regarded as immaterial. [Harrison v. Lakeman, 189 Mo. 581, 599, 88 S. W. 53.]

Having reached the conclusion that the contract was established as alleged, the next question is whether or not plaintiff complied with the contract by paying the agreed purchase price for the property. She agreed to pay $20,000 for the real estate and garage building situate thereon, and $15,000 for the garage equipment. Plaintiff does not claim that she paid the entire purchase price of $35,000. Her contention is that she paid the entire purchase price of $20,000 and interest for the garage building, and that defendant and his brother agreed to and did take back the entire garage equipment and released her from the payment of the $15,000 which she had agreed to pay for such equipment.

Plaintiff testified that the entire purchase price of $20,000 for the garage building, including interest thereon was fully paid and that defendant, although requested so to do, refused to deed the property to her. Plaintiff testified that $2,900 of the purchase price was paid by a transfer of certain property and the balance was paid by checks. She did not have the cancelled checks in her possession. After she took possession of the property in 1917, her son and daughter operated the garage under the name, "Grand Machine Company," and were authorized by plaintiff to write checks under that name. Plaintiff testified that she thought her son and daughter had the cancelled checks representing certain payments on the property but she was not sure about it; that she had not seen the checks since 1919. The son produced and introduced in evidence five cancelled checks totaling $13,550.24. These checks were all drawn by the daughter on the "Grand Machine Company's" account and were payable to and endorsed by Haupt Brothers. Concerning the $2,900 payment, plaintiff testified that she and her husband sold a small piece of property to Charles F. Hall for $2,900; that at the time this sale was made to Hall, Haupt Brothers were indebted to Hall; that instead of Hall paying plaintiff the $2,900, by agreement of all parties, Hall credited the $2,900 on Haupt Brothers' indebtedness to him, and Haupt Brothers gave plaintiff credit for a like amount on her indebtedness to them. Plaintiff also testified that she and her husband sold another piece of property to Hall for $4,000. Hall testified to the same thing. Plaintiff testified that her husband gave her $2,000 from the sale of this property and she turned that amount over to Haupt Brothers on her indebtedness. She was asked

how she paid this amount to Haupt Brothers. She stated that did not remember whether she gave them the check which her husband gave her or whether she deposited her husband's check in the bank and gave her own check to Haupt Brothers. Adding the payments represented by the five cancelled checks which the son produced, to the payments made from the sale of the two pieces of property makes a total payment of $18,450.24. Plaintiff further testified that she and her husband had a piece of ground on Clayton Road which they sold and she got about $6,000 as her part of that sale. Plaintiff's testimony as to this sale and what she got out of it, is corroborated by the testimony of Arthur C. Hayne, a real estate agent, who testified that he sold a piece of property for Mrs. Furrer for $6,605; that Mr. Furrer got $605 out of it as his share; that there was no mortgage on the property and the title was clear. Plaintiff testified that she paid Haupt Brothers the balance she owed them out of this $6,000 which she got out of this property. Plaintiff further testified that when she made the final payment her mother, defendant and his brother John were present.

"Q. What did you say and what did they say? A. Well, they told me I owed a balance of $150, and if I paid that now he would give me the paper that he kept the account, so I gave him the amount, $150. He said, 'You are all paid; here is the paper, I kept that account; I ought to mark it paid, but I have no pencil just now.' He said, 'But we will never ask you for that amount; need never worry about that.'

"Q. What property was he talking about? A. Both the pieces, Mr. Pirkey.

"Q. That was both pieces mentioned in the petition? A. Yes, sir.

"Q. Who was that that did the talking? A. It was Joe."

August Beck, a witness for plaintiff testified that he heard defendant and his brother John Haupt say concerning both pieces of property, "that they had nothing to do with the property any more, that Mrs. Furrer bought; that they had nothing to do with it, that she had bought it and paid for it." Witness Charles La Barge testified to hearing defendant say, in substance, the same thing.

Defendant testified that he kept a record of the payments made by plaintiff on the principal debt. He introduced this record in evidence as defendant's Exhibit 6. It is as follows:

Jan. 1, 1917.

Business, rate 3% ..............................$35,000.
Paid on capital
     July 1917 ............................... 2,000.
     Jan. 1918 ............................... 3,000.
     July 1918 ............................... 3,000.

| | | | |
|---|---|---|---:|
| Aug. | 1918 | Pennsylvania house, Hall ...... | 2,900. |
| Aug. | 1918 | Cash ........................ | 100. |
| Jan. | 1919 | Cash ........................ | 3,000. |
| July | 1919 | Cash ........................ | 3,000. |
| Jan. | 1920 | Cash ........................ | 1,586.57 |

$18,586.57

Defendant testified concerning this exhibit as follows:

"Q. The total payments on that page as credited is marked $18,-586.57 plus $1,400? A. That is right, yes."

No explanation is offered as to why the $1,400 payment to which defendant testified, does not appear on the exhibit as abstracted. These two amounts total $19,986.57 which amount lacks only $13.43 of paying the principal debt of $20,000 in full. In addition to these payments on the principal debt, defendant introduced Exhibit 5 which was a record he kept of the interest payments made by plaintiff. It is as follows:

Jan. 1, 1917.

Paid Interest.

| | | |
|---|---|---:|
| June | 1917-Int. ............................... | $525.00 |
| Jan. | 1918-Int. ............................... | 495.00 |
| July | 1918-Int. ............................... | 450.00 |
| Jan. | 1919-Int. ............................... | 360.00 |
| July | 1919-Int. ............................... | 315.00 |
| Jan. | 1920-Int. ............................... | 270.00 |

There appears to be no room for serious controversy between the parties as to the amount of money plaintiff has paid. Viewing the record as a whole the weight of the evidence is that she has paid the sum of $20,000 with interest thereon in full. This brings us to the question as to where this $20,000 payment should be applied. If it be applied on the purchase price of the real estate, it pays that amount in full and entitles payment to a deed from defendant conveying the real estate to her. On the other hand, if a part of the $20,000 payment be applied to the purchase price of the personal property, and the remainder to the purchase price of the real estate, it leaves plaintiff indebted to defendant on both purchases.

It is plaintiff's contention that by mutual agreement of the parties, defendant and his brother took back the personal property from her, released her from the payment of the $15,000 which she had promised to pay therefor, and agreed to credit all money she had paid to them as a payment on the real estate.

The evidence offered by plaintiff in support of this contention is substantially as follows:

Plaintiff purchased both the real estate and the garage equipment in January, 1917. Her son and daughter operated the garage from that time until April, 1920, at which time they left plaintiff's service

and engaged in other business. Plaintiff testified that after her son and daughter left, defendant and his brother told her that they would take the garage equipment back, release her from the payment of the $15,000 and credit what she had paid as a payment on the real estate. She further testified, "They said the machinery was no good to me since the children didn't run the shop any more; that they would take it back for their own account, credit me, release me from the debt." They said, "You will have the rent, you won't have to work; you worked hard all your life; you will have the building to live on the rent; we will take the machinery back and we will sell that and get enough out of it to suit us." She further testified that they took the machinery back, sold it and kept the money. Plaintiff's witness, Beck, testified that defendant told him that they took the machinery off plaintiff's hands and sold it for more money than they paid for it when it was new. Defendant was asked what they got for the machinery. He testified that he did not remember exactly what it sold for but they at least came out about even on it. Plaintiff further testified that when she made the last payment of $150, they told her that was all she owed. Witnesses Beck and La Barge testified that they heard defendant say that they had nothing further to do with the real estate; that plaintiff had bought it and paid for it.

Defendant contends that a part of the money paid by plaintiff was applied on the purchase price of the real estate and the remainder was applied on the purchase price of the personal property, thus leaving plaintiff indebted to him on both purchases.

The evidence offered by defendant in support of this contention is as follows:

It appears that defendant and his brother were desirous of obtaining some security for the payment of the $15,000 which plaintiff agreed to pay for the personal property. Accordingly in June, 1919, they conveyed the personal property to plaintiff by bill of sale for a recited consideration of $4,000 cash and thirteen promissory notes then executed by plaintiff aggregating $11,000. The $4,000 cash payment was not made at that time but by mutual agreement, $4,000 of the money theretofore paid by plaintiff was thus applied. Shortly thereafter and in July, 1919, plaintiff entered into a written contract with her son and daughter relative to the operation of the garage. This contract recited that there was still due and unpaid, $10,000 on the real estate and $11,000 on the garage. Defendant introduced in evidence this contract, the bill of sale and the chattel mortgage, evidently for the purpose of showing on this phase of the case, that a part of the money paid by plaintiff had been credited on the purchase price of the personal property. These documents do show that $4,000 of the money was so applied at the time these papers were executed. Plaintiff does not deny this fact. However,

if her evidence is to be believed, defendant's agreement to take back the personal property, released her from the payment of the $15,000 and credit the money she had paid as a payment on the purchase price of the real estate, was made some months after the bill of sale and chattel mortgage were executed. The agreement to apply the $4,000 as a payment on the personal property, at the time the mortgage was executed, would not be an obstacle to the making of the latter agreement if the parties saw fit to make it.

Mr. Trieseler, an attorney, who represented defendant and his brother in obtaining the chattel mortgage, testified that in April, 1920, he had a conference with plaintiff looking to the collection of the notes that were due in January and April, 1920, and informed her that if they were not paid the chattel mortgage would be foreclosed; that she objected to a foreclosure and inquired whether arrangements could not be made to sell the property in some other manner; that he had another conference with her some month or six weeks later at which it was arranged that defendant and his brother would try to sell the property piece-meal at private sale and credit the proceeds of the sale on the amount due under the mortgage. Conceding that plaintiff agreed to this arrangement at the time testified to by the witness, such occurrence would not be conclusive that defendant did not thereafter make the agreement which plaintiff claims he did make. The evidence indicates that the arrangements which witness Trieseler made for the sale of the property were never carried out. The uncontradicted evidence is that the garage was operated thereafter up to February, 1921. It is shown that Haupt Brothers made sales of machinery to four different persons. Three of these sales were made in February, 1921, and one in June, 1922.

Defendant testified as a witness in his own behalf. While he testified from memory that there was approximately $6,000 due on the personal property and $8,000 on the real estate, he did not deny plaintiff's testimony to the effect that he and his brother agreed to take back the personal property, release plaintiff from the payment of the $15,000, and credit what she had paid as a payment on the real estate. Neither did he deny her testimony that when she made the last payment of $150, he told her that was all she owed.

Defendant contends that the agreement to take back the personal property and release plaintiff from the payment of the agreed purchase price, if made, was void for want of consideration.

There would be merit in this contention if defendant had not received anything in return for the release but such is not the situation. Plaintiff's return of the property to defendant by mutual consent of the parties, furnished a sufficient consideration for defendant's release of plaintiff's obligation to pay the balance of the purchase price, as well as for his agreement to credit the payments theretofore

made by plaintiff, as a payment on the debt due on the real estate. [Facendini v. Hillman, 298 S. W. 1073.]

It was admitted that John Haupt died in October, 1925, and that prior to his death he conveyed his interest in the property in question to defendant who now has the record title.

It is plaintiff's contention that she paid defendant and John Haupt the purchase price of $20,000 and interest for the real estate described in count one of the petition, and that by mutual consent she returned the personal property to them and they released her from the payment of the $15,000. The chancellor so found, then decreed that defendant should forthwith convey said real estate to plaintiff by warranty deed. Keeping in mind the rule that we are authorized to weigh the evidence and make our own finding of facts, and viewing the evidence in the light of that rule, it is our conclusion that the chancellor reached the right result and his decree requiring the conveyance of the property to plaintiff should be affirmed.

By way of counterclaim to the first count of the petition, defendant seeks to recover the sum of $5,390 as principal and the sum of $2,640 as interest which he claims is yet due him on the purchase price of the personal property. The finding in favor of plaintiff on the first count of the petition necessarily resulted in a denial of defendant's right to recover this amount. Defendant also seeks by this counterclaim to recover the sum of $9,600 for services which he claims to have rendered at the request of plaintiff in managing, caring for and conducting said garage business and disposing of same, for a period of approximately four years, from January 1, 1917, to February 27, 1921. By way of reply plaintiff invoked the five-year Statute of Limitations. The decree of the chancellor denied a recovery on this claim for services. This suit was brought on June 1, 1926. It appears from the allegations of the counterclaim that the alleged services were rendered, and the garage was sold more than five years before this suit was brought. The claim was barred by limitation, and for that reason, if for no other, the decree denying a recovery should be affirmed.

The second count of the petition seeks specific performance of an oral contract to convey the real estate described in said count. The real estate in question is a residence property located in the city of St. Louis, across the street from the garage building involved in the first count of the petition.

Plaintiff, and defendant Joseph Haupt, are brother and sister. There were two other brothers, John and Michael Haupt. It is admitted that the mother, Jacobina Haupt, a widow, deeded the property in question to Joseph and John Haupt in August, 1916. It is also admitted that John and Michael Haupt are dead, and that John Haupt, prior to his death which occurred in 1925, conveyed his

interest in the property in question to defendant Joseph Haupt who now holds the record title thereto.

Plaintiff testified to a conversation which occurred some time in 1919 at which she, her mother and her brothers Joseph and John Haupt were present. She was asked what her mother said about this property. Her answer was, "Mother told us all that she wanted that property divided into four equal parts; that my brother Mike was to have his fourth, and each was to get a fourth; that the two brothers agreed to that; they took it with that condition, I understood." She further testified:

"Q. What did they say? A. They said I could have the property; they sold the property to me.

"Q. What did they say in response to what your mother said? A. They was willing to do this; they said sure they was going to divide the property equal, the way she wanted it."

She further testified that they told her she could have the place for $7,000; that she was to pay the money to her brothers Joe and John on the installment plan and they were to take care of the brother Mike; that they told her she was to pay three-fourths of $7,000; that one-fourth belonged to her. Plaintiff testified that after this arrangement was made she paid the purchase price of three-fourths of $7,000 in full and demanded that the property be conveyed to her but defendant failed and refused so to do.

While defendant denied that he agreed to sell the property to plaintiff, his evidence taken as a whole tends to show that he did make such an agreement. Defendant testified:

"Q. Did you ever make an agreement with your sister . . . to sell that property to her? A. She was talking about it; yes, she spoke of it.

"Q. Did you agree to sell it to her? A. No.

"Q. It was agreed that she would pay three-fourths interest and get the property, wasn't it? A. That is what she said, yes.

"Q. What did you and your brother say? A. I don't know what he said; I wouldn't agree to it.

"Q. You were there, did your brother agree to that? A. Yes." Defendant further testified:

"Q. Did she every pay? A. She paid rent money, what I considered rent money.

"Q. She asked you then if she could rent it? A. Yes.

"Q. Did you agree on a price? A. Why, yes; she said, 'We will take this as purchase money, I will pay you fifty dollars a month; when a certain amount is paid, I will quit paying the rent.' That's all there was to it.

"Q. She said what? A. She said it was purchase money; I couldn't see it that way; she paid fifty dollars a month until a certain amount was paid, and quit paying.

"Q. She said she would pay you fifty dollars a month on that purchase price? A. Yes.

"Q. What did you say? I didn't agree to it.

"Q. Did you say anything? A. I didn't agree.

"Q. What did you say? A. I didn't agree with the proposition.

"Q. Did she make those payments? A. Fifty dollars a month, yes."

It appears from defendant's testimony that plaintiff was proceeding on the theory that she had purchased the property and that the payments she made were not payments of rent but were payments on the purchase price. Defendant was asked repeatedly what he said in reply to plaintiff's proposition to purchase the property. His answer was, "I didn't agree to it." He might have meant by this answer that he told plaintiff he would not accept her proposition, or he might have meant that did not say anything to her, one way or the other and that his silence amounted to a failure to agree to the proposition. Such evidence is of little probative value in the face of positive evidence to the contrary. In addition to this, defendant's own evidence tends to show that the payments made by plaintiff were not payments of rent, but were payments on the purchase price, and that she paid the purchase price in full. He identified and introduced in evidence a record of the payments made by plaintiff, which record he had kept in his own handwriting. This record is defendant's Exhibit 7 and is as follows:

3505 S. Grand Ave.

Kate

Jan. 2, 1920. $7,000.00

3505 S. Grand Ave.

Kate

Jan. 2, 1920, on acct. Includ-
ing ¼ part interest and
cash ..................$7,000.00
Less Alley .............. 230.00

$6,770.00
Credit Kate ¼ Int. ........ 1,692.50

$5,077.50
Credit cash .............$2,584.42

Bal. ............$2,493.08
Bal. Jan. 2, 1920 ........$2,493.08

Residence Payments.

| | | | |
|---|---|---|---|
| Jan. | 1-20 | ............................... | $ 30.00 |
| Jan. | 5-20 | ................................. | 50.00 |
| Feb. | 10-20 | ................................. | 50.00 |

| Mch. | 9-20 | ................................ | | | 38.00 |
|------|------|--------|------|------|------|
| Mch. | 17-20 | ................................ | | | 31.00 |
| Apr. | 5-20 | ........................... | Cash | $25.00 | |
| Apr. | 5-20 | ..................... | Credit desk | 25.00 | 50.00 |
| May | 18-20 | Cash ........................... | | | 50.00 |
| Jan. | 15 | Cash ........................... | | | 50.00 |
| July | 21 | Cash ........................... | | | 50.00 |
| Aug. | 21 | Cash ........................... | | | 50.00 |
| Aug. | 30 | Credit payment for Mike share .... | | | 1,044.00 |
| Sept. | | ........................... | | | 50.00 |
| Oct. | | ........................... | | | 50.00 |
| Nov. | | ........................... | | | 50.00 |
| Dec. | | ........................... | | | 50.00 |

$2493.08

1693.00

1/1/21—Bal.............$ 800.08

While this exhibit shows an unpaid balance of $800.08, evidently defendant did not keep a record of all payments made by plaintiff, because he testified that she paid three-fourths of $7,000 and then quit paying. Defendant first testified that he put the payments down as rent money, but when his attention was called to Exhibit 7, the record of the account, he said, "No, I didn't put any rent down there; I just made that division on *our* agreement, on *her* agreement; she said it was going to be a purchase but I couldn't see it that way; of course I put it down." He further testified: "Q. You put that right down there; you got there, 'Kate seven thousand dollars? A. Yes, that is the time we made this verbal agreement; there is nothing binding about it; I didn't agree to it.

"Q. You did make this verbal agreement? A. Yes.

"Q. You did make a verbal agreement to sell to her for seven thousand dollars? A. I didn't agree to it; I just kept the books that way as a matter of form."

Leon Clink, who had leased the property in question, asked Haupt Brothers to give him a written acceptance of the lease. Evidently he asked Haupt Brothers to agree to this lease because they held the record title to the property at that time. Concerning this affair, Clink testified:

"Q. What did you say to them? What did they say to you? A. Why, I spoke to Joe Haupt and asked him if he would give me a written acceptance of the lease Mrs. Furrer gave me, and he said that he would, and then Mrs. Furrer said no, he had nothing to do with the lease, that it was her property, in her name and she did not want him to do any signing of these papers; so then Mr. Joe Haupt did not sign them then, and then Joe said: "It is allright, Leon."

and he says, "You don't have to worry at all, the property has nothing to do with me, it don't belong to me, it is Mrs. Furrer's property and whatever she wants to do is perfectly all right with me;" he said the property is in his name because he is taking care of it for Mrs. Furrer on account of family troubles. So that was as far as we went."

Plaintiff's evidence is to the effect that by oral agreement between herself and her two brothers, Joseph and John Haupt, she purchased the property in question at an agreed price of three-fourths of seven thousand dollars and that she has paid the purchase price in full. It is apparent, without discussion, that defendant's evidence tends to corroborate rather than contradict the evidence of plaintiff. The chancellor found all the issues under this count of the petition in favor of plaintiff and adjudged and decreed that the defendant forthwith convey to plaintiff by warranty deed the property in question. This decree is supported by the weight of the evidence and should be affirmed.

By way of counterclaim to the second count of the petition, defendant sought to recover from plaintiff the sum of $2275 as rent for the property in question from February 27, 1921. The chancellor denied a recovery on this claim for rent. The evidence was that the verbal contract under which plaintiff purchased the property was made in 1919. It follows that if plaintiff purchased the property in 1919, she would not be liable for rent thereafter. The chancellor's finding that plaintiff did purchase the property under this verbal agreement necessarily resulted in denying a claim for rent alleged to have accrued after plaintiff purchased the property.

The decree as to both counts of the petition and as to both counterclaims is supported by the weight of the evidence and should be affirmed. It is so ordered. All concur.