Eugene C. THUMM (Plaintiff), Appellant,

v.

Curtis L. LOHR (Defendant), Respondent.

No. 29759.

St. Louis Court of Appeals.

Missouri.

Nov. 5, 1957.

Rehearing Denied Dec. 2, 1957.

John A. Mathewson, Cook, Fairfield, Howard & Murphy, St. Louis, for appellant.

Arnold J. Willmann, Chaim H. Zimbalist, Clayton, for respondent.

MATTHES, Judge.

On September 25, 1954, defendant Curtis L. Lohr drew his check on the City National Bank & Trust Co. of Kansas City, Mo., payable to Harry Herring Co., a real estate broker, for $1,200. The payee endorsed the check to the order of Eugene C. Thumm, plaintiff-appellant herein. Thereafter, when payment of the check was stopped by defendant, plaintiff brought this action seeking to recover the amount thereof. Trial of the issues to the court, a jury having been waived, resulted in a judgment in favor of the defendant. In time plaintiff prosecuted his appeal to this court.

At the threshold of the case we are confronted with a motion to dismiss the appeal for the reason that the points relied on as contained in appellant's brief are insufficient to meet the requirements of Supreme Court rule 1.08, 42 V.A.M.S. This motion was filed on October 3, 1957. On the following day appellant deposited a supplemental brief in the Office of the Clerk of this Court with a motion requesting leave to file the same. Examination of appellant's original brief discloses that two of the points relied on, while not wholly inadequate, are nevertheless subject to criticism because they fail to specify and designate wherein and in what respect the court committed error. The supplemental or amended brief supplies these deficiencies. While the supplemental brief was not delivered to or served on respondent 45 days before the day on which the cause was set for hearing, as required by rule 1.09, we do not understand that respondent makes any contention in this respect. His position is, that absent a request to suspend the rules, there is no authority for the filing of the supplemental brief. While appellant's motion does not directly and expressly call for a suspension of the rules as authorized by rule 1.15, we construe said motion as an attempt in good faith to pray for that relief and have concluded that the interests of justice require the filing of the supplemental brief. This action will not prejudice respondent for it appears on October 4 the latter filed his brief in which he responded to and met the points advanced by appellant in both his original and supplemental briefs. Therefore, respondent's motion to dismiss is overruled; appellant's supplemental brief is ordered filed and respondent's motion to strike the supplemental brief is overruled.

The check upon which the suit was brought had its origin in these facts: In 1954 plaintiff was engaged in the business of building and selling homes in a subdivision in St. Louis County, Missouri. A contract for the sale of a lot and dwelling in plaintiff's subdivision, dated September 25, 1954, was entered into between plaintiff as seller

and defendant and his wife, Jacqueline A. Lohr, as purchasers. By the terms thereof the purchasers agreed to pay $24,000 for the property and on the day the contract was prepared Mr. Lohr issued his check, which is the subject of this action, as an earnest payment. It was further provided that the purchasers would forfeit the earnest deposit if the sale was not consummated through fault of purchasers. On September 28, 1954, the contract was approved by plaintiff and on the same day the Harry Herring Co. endorsed and delivered the check to plaintiff. According to the testimony of defendant, a day or two after the contract was executed he informed Mr. Thumm in a telephone conversation that he (defendant) and his wife had "decided we didn't like that particular house. I told him we still wanted to live in that same general area. I asked him if he would allow us to be released from the contract for that particular house. He said 'Yes.' "

"Q. Did you have any conversation with him about stopping payment on this check? A. I told him it would be necessary for me to stop payment on the check.

"Q. And you did do that? A. I did do that.

"Q. Now, did you make arrangements with him at that time, or did you have any conversation with him in respect to coming back to go out to the same subdivision and looking at another house? A. I told him that we would be willing to come back and look at another house and lot in that location.

"Q. What did he say about you buying a house out there, you and your wife, if you recall? A. Well, he said he had developed the area, or done quite a lot of building in that area, and he was quite happy to have young people living out there, and he hoped he would be able to find us another location if this one was not suitable.

"Q. And you say you had asked him to cancel this contract, is that correct? A. I asked him specifically about that particular contract which we left him; and I wrote him a letter confirming our conversation.

"Q. To the best of your recollection what was his answer to the request to cancel? A. His answer was emphatic. I would never have put it in the letter if he hadn't said that."

Pursuant to the conversation, defendant did immediately stop payment of the $1,200 check. Then, according to his testimony which was fully verified by plaintiff's witness, Mr. Herring, defendant, his wife, their three children, and Mr. Herring went back to plaintiff's subdivision during the week of October 8, 1954, and there met Mr. Thumm. Defendant testified that: "We looked at various locations. We agreed on one particular lot, which was unimproved. And Mr. Thumm said that he would build a house on there for a specific amount of money; and showed us the boundary lines of the lot; and talked to us about the drainage problems, and shrubbery, and things of that sort. And we tentatively agreed at that time on a price for a house to be erected on this lot."

"Q. What was the price? A. $28,000.00.

"Q. Was that the conversation you had in the subdivision with Mr. Thumm and Mr. Herring? A. Yes, sir."

Defendant stated that at no time during his last visit to the subdivision and while negotiations were carried on for the purchase of the $28,000 property did Mr. Thumm make any reference to the contract of September 25 or make demand for the amount of the check, payment of which had been stopped. Following the foregoing conference, defendant returned to his home in Kansas City, Missouri, where he was then residing. Within a day or two thereafter he received a contract for the new location which specified that the price for the property which had been selected was $28,000. In this connection it should be pointed out that Mr. Herring testified that on the 15th of October and subsequent to defendant's last visit to the subdivision, he

prepared and sent a copy of the new contract to the defendant along with a letter containing instructions with reference to the execution thereof.

The issues raised by defendant's answer litigated in the lower court, and here pursued by the defendant are rescission and abandonment of the contract and all rights thereunder; and that the contract was invalid from its inception because there was no consideration therefor. With respect to the latter defense it is contended that because title to the lot described in the contract was held by plaintiff and his wife as tenants by the entirety, plaintiff alone could not legally contract to sell the property.

The first contention of error presented by plaintiff is that the court improperly admitted the letter written by the defendant to plaintiff on October 5, 1954. Therein defendant stated, inter alia, "This is to confirm our telephone conversation of Sunday, in which you stated that it would be agreeable to you to release us from our present earnest money contract for the property located at 10 Thorncliff Lane, Kirkwood, Missouri. We will be willing to sign a new contract for a house to be built at a different location, but in the same general neighborhood."

Plaintiff insists that this letter was self-serving in nature and consequently inadmissible.

Of course the rule is firmly entrenched that declarations made by a party in his own interest are ordinarily self-serving and inadmissible. Weller v. Weaver, 231 Mo.App. 400, 100 S.W.2d 594; Keeshan v. Embassy Investment Company, Mo.App., 303 S.W.2d 666. But in this jury waived case, it is our duty with deference to the opportunity of the trial court to judge of the credibility of the witnesses to "review the case upon both the law and the evidence as in suits of an equitable nature," V.A.M.S. § 510.310, subd. 4. Rejected testimony, if in the record and admissible, will be considered upon review, and by the same token, incompetent evidence admitted or considered by the trial court will be disregarded by us. Minor v. Lillard, Mo.Sup., 289 S.W.2d 1, loc. cit. 2, and cases there cited. So plaintiff's first point may be put to rest by a disregard on our part of the claimed self-serving declaration, for as we shall hereafter demonstrate other evidence in the record constitutes ample proof to support the decision denying plaintiff relief.

We do not understand that plaintiff seriously questions that the parties had the right by mutual agreement to lawfully rescind, abrogate or terminate the contract. This is a well-settled rule of jurisprudence. Rogers v. Fremder, Mo.Sup., 261 S.W. 105; Stoedter v. Turner, Mo.App., 237 S.W. 141; Shectz v. Price, 154 Mo.App. 574, 136 S.W. 733; Conroy Piano Co. v. Pesch, Mo.App., 279 S.W. 226; Facendini v. Hillman, Mo. App., 298 S.W. 1073, 1074; 17 C.J.S. Contracts § 413, p. 899; 12 Am.Jur. Contracts, § 431, p. 1011. But plaintiff does challenge the sufficiency of the evidence to establish that there was in fact a mutual agreement to rescind the original contract of sale. Our attention is directed to the testimony of plaintiff which presents a conflict with defendant's version of the telephone conversation following execution of the written contract. Although plaintiff conceded the conversation took place, he insisted that defendant merely requested plaintiff to forego depositing the check for a few days in order that a transfer of defendant's bank account could be effected, and he emphatically denied that there was any discussion with reference to cancelling or terminating the contract. Thus it will be seen that the record presents two versions of what transpired subsequent to the time the sales contract came into existence. The testimony of defendant, set out supra, if true, afforded substantial proof that there was a mutual understanding of rescission. The trial judge, occupying a more advantageous position with respect to judging of the credibility of plaintiff and defendant, accepted the latter's testimony, and we perceive of no reason why the due

deference rule should not be followed. It appears from the memorandum opinion filed by the trial judge that he was pursuaded to conclude the parties had rescinded their contract because of the events which transpired subsequent to the time defendant stopped payment of the check. The impact of these occurrences on the vital issue of rescission is of such force that little doubt can exist on the question. For plaintiff and defendant, as reasonable, prudent persons, would hardly enter into negotiations looking to the purchase by defendant of another home in the same subdivision for $28,000 unless both parties were fully aware of and recognized that the original contract was no longer in existence.

Plaintiff also makes the point that any agreement to rescind was ineffective because there was no consideration to support it. The consideration required to bring about a rescission of the contract is influenced by the document itself and performance or nonperformance thereunder. The rule prevails that if the contract was wholly executory, the mutual agreement of the parties was sufficient to set it aside without consideration. Stoedter v. Turner, Mo. App., 237 S.W. 141, 144; Jose v. Aufderheide, 222 Mo.App. 524, 293 S.W. 476, 478; Facendini v. Hillman, Mo.App., 298 S.W. 1073, 1074; Deu Friend v. McDermott, Mo. App., 251 S.W.2d 339, 342. The same authorities hold that the surrender of a valuable right under a contract is ineffectual unless supported by a valuable consideration. As to plaintiff it is clear that the contract was executory, for while numerous obligations were imposed upon him, the undisputed fact is there had been no performance on his part. See 17 C.J.S. Contracts § 7, pp. 325, 326; Rockhill Tennis Club of Kansas City v. Volker, 331 Mo. 947, 56 S.W. 2d 9, 17. Defendant's position was slightly different, in that he had issued his check for an amount equal to five per cent of the contract price. So as to him the contract was not wholly executory. Deu Friend v. McDermott, supra. Nevertheless, the evi-

dence affords proof that there was a sufficient consideration to support the agreement to rescind. Plaintiff was released and discharged from all obligations imposed on him, which included finishing and decorating the interior of the house; furnishing shutters for front windows, and screens and venetian blinds for all windows; and sodding and grading entire lot. Moreover, in relinquishing his rights under the original contract plaintiff was presented with, and acted on, the opportunity to sell defendant another house and lot for an amount which exceeded by $4,000 the consideration plaintiff would have been paid if the rescission had not been effected. It is made to appear that not only were the negotiations for the $28,000 property entered into, but plaintiff's real estate broker prepared and forwarded to defendant a new contract with instructions relative to executing the same. It was only when these negotiations, for some reason not apparent in the record, fell through, that plaintiff assumed the position that there had been no valid rescission of the original contract.

Under the circumstances, we conclude and hold that the sales contract was legally rescinded and terminated, cf. Facendini v. Hillman, supra; Deu Friend v. McDermott, supra; Furrer v. Haupt, 329 Mo. 1087, 49 S.W.2d 53, loc. cit. 57, and that the contract and all rights thereunder were wholly abandoned. Peoples Finance Corporation v. Buckner, 344 Mo. 347, 126 S.W.2d 301; Alropa Corporation v. Smith, 240 Mo.App. 376, 199 S.W.2d 866, loc. cit. 871; 17 C.J. S. Contracts § 412, p. 899.

In view of the foregoing conclusions it is unnecessary to consider whether the original contract was invalid from its inception because plaintiff's wife failed to join in the execution thereof.

The judgment is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.